**Robert J. MASON et al., Plaintiffs,**

v.

**COUNTY OF DELAWARE, Defendant, and Harry A. McNichol et al., Defendants.**

**Civ. A. No. 71–1640.**

United States District Court, E. D. Pennsylvania.

Sept. 23, 1971.

John M. Gallagher, Jr., Jack Brian, Richard Brian, DiSanti & Hamilton, Upper Darby, Pa., for plaintiffs.

Guy G. deFuria, Edward H. P. Fronefield, Fronefield, deFuria & Petrikin, Chester, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, District Judge.

Plaintiffs are former County employees, hired "at will" as juvenile detention officers, who claim they were discharged in violation of their constitutional rights. As public employees, hired at will, they assert that they were entitled, under the Fourteenth Amendment of the Constitution of the United States, to a notice with a specification of reasons for discharge, and a "minimal due process" hearing to refute or answer such reasons, prior to being discharged. Plaintiffs' cause of action is based on the "Civil Rights Act", Title 42 U.S.C.A. § 1983 (1970); and this Court's jurisdiction is founded on Title 28 U.S.C.A. § 1343(3)–(4) (1962).

The facts are not in dispute so far as the present issues are concerned. Seven former employees of the juvenile probation department of Delaware County, Pennsylvania, seek in this action to obtain a mandatory injunction to be reinstated and to be awarded compensatory damages. The defendants are the County of Delaware, the County Commissioners, and the County Judges, all of whom are alleged to be the statutory employers of plaintiffs. A hearing was held on a motion for a preliminary injunction, and after hearing, filing of briefs and oral argument, the motion was denied. There are pending motions to dismiss and for summary judgment for lack of jurisdiction and failure to state a cause of action.

Each of the plaintiffs testified during the preliminary injunction hearing. From the pleadings and the testimony taken at the hearing, the following facts are established:—

1. Plaintiffs were all employees of Delaware County. They worked in the juvenile detention center. One plaintiff was a supervisor of juvenile detention officers; one was a supervisor of juvenile matrons; one was a juvenile matron; the remaining four were juvenile detention officers. Their respective salaries ranged from a low of $6,031 annually for the juvenile matron to a high of $7,042 for the supervisor of juvenile detention officers. The supervisor of juvenile matrons had been employed by the County since June of 1960. The juvenile matron had been so employed since 1951. All other plaintiffs had been County employees for less than three years.

2. On May 20, 1971, a letter sent over the signature of the Chief Juvenile Probation Officer to each plaintiff stated, inter alia: "[U]pon the directive of the President Judge and with the concurrence of the Chairman of the County Commissioners, you are hereby dismissed for cause at once from your position. * * *"

3. On May 22, 1971, the plaintiffs wrote a letter to the President Judge of the Court of Common Pleas of Delaware County requesting a hearing relative to their dismissal. The letter further stated that: "It is our profound contention that our termination for cause or causes unknown is inconsistent with fair employment practices." The letter requested a meeting of all concerned to discuss the reasons for the County's action and to affford plaintiffs an opportunity to respond to charges of which they claimed to be totally unknowledgeable. The request was denied by the President Judge by letter of May 25, 1971.

4. Plaintiffs have received no official explanation for their discharge other than the letter of dismissal, dated May 20, 1971.

5. Most of the discharged employees failed to report for work on a given date shortly before they were discharged, and most of them telephoned the night before saying they were sick. One of the supervisors at the juvenile detention center told one or more of the plaintiffs that the reason for the discharges was for failure to follow regulations.

6. Plaintiffs were all hired "at will." There were no written contracts of em-

ployment. No plaintiff had any statutory tenure, civil service or similar job protection status. No plaintiff belonged to any labor union in respect to his or her county employment.

7. Plaintiffs had various backgrounds and skills prior to being employed by the County. There were no special skills, qualifications or requirements specified by the employer during the periods when any of the individual plaintiffs were employed, although several plaintiffs had prior experience in juvenile, child welfare, and/or social work.

8. Subsequent to discharge, several plaintiffs obtained other employment, some in entirely unrelated occupations. No plaintiff has claimed total inability to obtain other employment by reason of his or her discharge, but most, if not all have experienced some difficulty in obtaining work, and all preferred their former employment with the County.

9. Plaintiffs have sought no other judicial or administrative remedy than the written request to the President Judge of Delaware County for a meeting and the present action.

10. The defendants, or one or more of them, are the statutory employer of plaintiffs.

There are two distinct but interrelated issues before the Court. The first issue is whether this Court has jurisdiction. The second issue is whether plaintiffs have stated a cause of action. The substantive "cause of action statute" is Title 42 U.S.C.A. § 1983 (1970) which provides as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Original jurisdiction over Civil Rights actions is conferred upon the United States District Courts under 28 U.S.C.A. § 1343. Plaintiffs assert jurisdiction of this Court under subsections 3 and 4 of 28 U.S.C.A. § 1343 (1962), which provide:

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for protection of civil rights, including the right to vote."

Plaintiffs claim that the right sought to be redressed is the right to procedural due process guaranteed by the due process clause of the Fourteenth Amendment to the Constitution of the United States (Paragraph 1 of the Complaint). Although no case has flatly enunciated the doctrine that all public employees, regardless of the terms or type of employment, are constitutionally entitled in every instance to a statement of reasons and a hearing at the administrative level before being discharged, there is considerable lack of unanimity among the circuits as to the circumstances under which prior notice, statement of reasons, and a hearing are imperative. On the factual situation involved in the present case, there apparently is no controlling decision by the United States Supreme Court or the Third Circuit Court of Appeals.

The Second Circuit in the case of Tichon v. Harder, 438 F.2d 1396 (2nd Cir. 1971), dismissed an action on jurisdictional grounds so closely analogous to the present case that if decided by this circuit, it would be determinative of the issues. Although factually distinguishable in several aspects from the present case, the legal issues are identi-

cal. Plaintiff was a college graduate with a major in social work. The State hired her as a child welfare caseworker for a statutorily, mandated six month probationary period. At the end of the six month period, her employment was terminated because one of her superiors gave her an unsatisfactory rating in one of several categories. Plaintiff was not advised until a few days before termination of employment that she was being considered for termination. Although given a copy of the report, which stated reasons for her discharge, she was afforded no hearing or opportunity to explain the unsatisfactory grading by her superior. Her action under 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343(3) asserted a lack of procedural due process because she did not receive notice, a hearing, or any opportunity to refute allegations of unsatisfactory work. The complaint was dismissed for lack of jurisdiction.

In *Tichon* the Court distinguishes between personal liberties and purely property rights, holding that the former are cognizable under the jurisdiction conferred by 28 U.S.C.A. § 1343, while the latter are not. *Id.* at 1400. In reaching its decision, the Court restricted the dictum in an earlier case of Eisen v. Eastman, 421 F.2d 560, 565 (2nd Cir. 1969), that the "personal liberty to pursue a calling of one's choice" is a basis for jurisdiction, and held that the Court would have jurisdiction only if the impact of the discharge from employment was such as would effectively deprive one of his livelihood. *Tichon* at 1402. The Court concluded that even though plaintiff was a highly and specially trained social worker, and intended social work to be her life's career, her loss of the job involved no deprivation of a personal liberty and was, therefore, not properly subject to the jurisdiction conferred upon district courts by Title 28 U.S.C.A. § 1343.

The doctrine that only personal liberties and not property rights are the basis for jurisdiction under 28 U.S.C.A. § 1343 (3)—(and presumedly also 28 U.S.C.A. § 1343(4))—was formulated by Mr. Justice Stone in Hague v. C. I. O., 307 U.S. 496, 531–532, 59 S.Ct. 954, 971, 83 L.Ed. 1423 (1939), when he stated that "whenever the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights, there is jurisdiction in the district court. \* \* \*" The distinction was adopted to reconcile Title 28 U.S.C.A. § 1343 with the general federal question statute of Title 28 U.S.C.A. § 1331 (1966) which conferred jurisdiction in "all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States." Thus, if purely property rights are involved, the amount in controversy must exceed $10,000.00; whereas if a personal liberty, "not dependent for its existence upon the infringement of property rights" is involved, no jurisdictional amount is requisite because jurisdiction is available under § 1343. Sometimes overlooked in citing Mr. Justice Stone's distinction are his statements that Title 28 U.S.C.A. § 1343 includes "many rights and immunities secured by the Constitution, of which freedom of speech and assembly are conspicuous examples, which are not capable of money valuation." *Hague* at 529, 59 S.Ct. at 970. Section 1343 "at least must be deemed to include suits in which the subject matter is one incapable of valuation." *Hague* at 530, 59 S.Ct. at 971.

The fine distinction propounded by Mr. Justice Stone, logical though it may be in reconciling two jurisdictional statutes, causes great confusion in its practical application, especially in cases involving discharge of employees, where varying factual situations determine if the action is one to redress "personal liberty, not dependent for its existence upon the infringement of property rights."

In Birnbaum v. Trussell, 371 F.2d 672 (2nd Cir. 1966), the Second Circuit had determined that the district court had jurisdiction and that plaintiff was entitled

to notice and a "due process hearing" at the administrative level where (1) there was an allegation of racial bias in the discharge, (2) the plaintiff physician's ability to pursue his profession was at stake, and (3) his professional reputation was seriously injured by reason of a letter mailed to other hospitals. The factual variations between *Birnbaum* and *Tichon,* both from the Second Circuit and both decided within a few years of each other, illustrate the practical difficulties in determining whether the Court has jurisdiction and whether there is a cause of action.

The Seventh Circuit in the recently decided case of Roth v. Board of Regents of State Colleges, 446 F.2d 806 (7th Cir. July 1, 1971), lower court opinion at 310 F.Supp. 972 (W.D.Wis.1970), without discussing the jurisdictional issue reached a result in conflict with *Tichon.* In *Roth,* the Circuit Court in a split decision, affirming the district court, held that procedural due process entitled Roth, a non-tenured state university professor, to a statement of reasons why he was not to be retained and a hearing at which he could respond to them at the administrative level. The failure to afford such procedures was deemed sufficient to establish jurisdiction under § 1343 and a cause of action under § 1983. The dissenting opinion of Judge Duffy relied on the fact that in all similar cases where jurisdiction was retained, there was an allegation of the infringement of some constitutional freedom in addition to a violation of procedural due process. Judge Duffy noted, at page 813, that the dismissal, or nonrenewal of a contract, of a probationary instructor without a statement of reasons was held to pass the scrutiny of the due process requirements in the Tenth Circuit, Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969), cert. denied, 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970); and the Eighth Circuit, Freeman v. Gould Special School District of Lincoln County, Ark., 405 F.2d 1153 (8th Cir. 1969), cert. denied, 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93

(1969). However, the First Circuit has taken a position which is similar to, if not directly in accord with, that of the Seventh Circuit. Drown v. Portsmouth School District, 435 F.2d 1182 (1st Cir. 1970). In *Drown* the Circuit Court required the school board to state reasons why it refused to rehire a nontenured school teacher and to give the teacher access to the evaluation reports in her personnel file, but the Court did not require a hearing.

Plaintiffs cited Poddar v. Youngstown State University (N.D.Ohio 1971), by attaching a copy of the memorandum order of the district court. Without discussing or citing any authority, the Court found "on the complaint and evidence adduced" that there was jurisdiction under 28 U.S. C.A. § 1343(3) and a cause of action under 42 U.S.C.A. § 1983, and that failure to renew plaintiff's non-tenured employment contract as an assistant professor "without disclosing the reasons for such termination, constitutes arbitrary and capricious conduct, prohibited by the due process clause of the Fourteenth Amendment, and violates plaintiff's rights under the Federal Civil Rights Statutes upon which jurisdiction is based." The Court directed either renewal of the contract or a written statement of the reasons and an opportunity "for a hearing at which to contest such a decision." In addition to failing to cite any supporting authority for its position, the *Poddar* case is in conflict with the law espoused by its circuit in Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971). In *Orr* the Circuit Court was faced with the issue of "whether a public school teacher who has not attained tenure status and whose contract of employment is not renewed has a constitutional right to be told the reason for the nonrenewal and to a hearing." *Id.* at 130. Without discussing the question of jurisdiction the Court reversed the district court, 318 F. Supp. 1041 (S.D.Ohio E.D.1970), and, after reviewing the split in the circuits on the question of whether the complaint had merit, held that the refusal to rehire

the plaintiff without giving reasons was not an arbitrary and capricious action violating the teacher's substantive rights under the Fourteenth Amendment due process clause. *Id.* 444 F.2d at 134. Since the plaintiff failed to allege that his dismissal was in violation of some constitutionally protected right, *e. g.,* right to free speech, the complaint based on Section 1983 was ordered to be dismissed.

The split among the circuit courts, as illustrated by the *Tichon* case and the *Roth* case, concerns what facts must be shown by the plaintiff in order to allege a prima facie case. In *Tichon* the court in effect holds that in order for a discharged employee to allege jurisdiction and a cause of action under § 1983, he must make an initial factual allegation or showing by evidence that one of his constitutionally protected rights or personal liberties has been violated. In *Roth* the mere failure to state reasons at the administrative level alone was held sufficient for jurisdiction under Section 1343 and a cause of action under Section 1983. However, case law indicates that the *Roth* line of cases may only pertain to teachers, because of the academic community's special sensitivity to any restraint on personal liberty.

While some courts have chosen to ignore the question of jurisdiction and have addressed themselves only to the merits, Justice Stone's opinion in the *Hague* case should not be sub silentio ignored even though it has been criticized. *E. g.,* The "Property Rights" Exception to Civil Rights Jurisdiction— Confusion Compounded, 43 N.Y.U.L. Rev. 1208 (1968). In Joe Lewis Milk Co. v. Hershey, 243 F.Supp. 351 (N.D. Ill.E.D.1965), the district court refused to apply the doctrine stating that "modern day courts have taken a more latitudinarian view." *Id.* at 354. Nevertheless, most of the courts recognizing the issue of jurisdiction follow the rule of *Hague,* and I will apply that rule in this case.

A factual analysis of the cases affords guidelines in applying the "personal liberties versus property rights" test. If it is alleged that the real reason for the discharge of an employee is because the employee has exercised one of the personal liberties guaranteed by the first eight amendments to the United States Constitution, and as made applicable to State action by the Fourteenth Amendment, the Court has jurisdiction. *Tichon, supra* (jurisdiction denied); McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968). The impairment of a skilled employee's reputation as a result of his being discharged to the extent of severely hindering his ability to practice his vocation, as is usually the case where the employee is a professional man, constitutes the loss of a right beyond the mere loss of property. Birnbaum v. Trussell, 371 F.2d 672 (2nd Cir. 1966), cited in *Tichon, supra;* Citta v. Delaware Valley Hospital, 313 F.Supp. 301 (E.D.Pa.1970) (The *Citta* case involved a physician whose operating privileges at a "Hill-Burton Fund" hospital were severely restricted without a "due process" hearing.).

In the present case, there are certain allegations in the complaint that conceivably assert as legal conclusions a violation of personal liberties. However, from oral argument, counsel for plaintiffs made clear that the only claim asserted is that plaintiffs as public employees are constitutionally entitled as a matter of right to a statement of reasons for their discharge and a "due process" administrative level hearing to refute or explain away those reasons. Plaintiffs do not claim to be professional or highly skilled workers and thus their dismissal does not do irreparable harm to their reputations. Plaintiffs' letters of discharge stating "for cause" were essentially noncommittal as opposed to the publication and circulation of the highly defamatory reasons noted in *Birnbaum, supra.* See *Tichon, supra.* In addition I will follow the view that a failure to state reasons is not arbitrary or capricious conduct, *Orr, supra,* and that the failure to give a reason itself does not offend constitu-

tionally protected personal rights and liberties. Therefore, this Court does not have jurisdiction of this case under § 1343.

On the merits of the case, plaintiffs contend that a violation of § 1983 will occur where any public employee, even if hired at will for a routine job, is summarily discharged unless he is first given the reasons for discharge and a hearing. United States Supreme Court decisions rather firmly state to the contrary. Cafeteria and Restaurant Workers v. McElroy, 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961), says: "It has become a settled principle that government employment, in the absence of legislation, can be revoked at the will of the appointing officer." Again at page 898, 81 S.Ct. at page 1750, the Court states: "But to acknowledge that there exist constitutional restraints upon state and federal governments in dealing with their employees is not to say that all such employees have a constitutional right to notice and a hearing before they can be removed." Vitarelli v. Seaton, 359 U.S. 535, 539, 79 S.Ct. 968, 972, 3 L.Ed.2d 1012 (1959), cited with approval in *Cafeteria Workers, supra,* held that a governmental employee not covered by Civil Service or similar statutory protection could be summarily discharged "at any time without the giving of a reason." In Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960), the Court in striking down a statute as infringing upon a teacher's freedom of association recognized the limited rights of an employee hired at will and stated that: "[S]uch interference with personal freedom is conspicuously accented when the teacher serves at the *absolute will* of those to whom the disclosure must be made—those who any year can terminate the teacher's employment without bringing charges, *without notice, without a hearing, without affording an opportunity to explain." Id.* at 486, 81 S.Ct. at 251. (Emphasis added.)

Although not binding on this Court, of some persuasive weight is the recently decided case of the Supreme Court of Pennsylvania entitled: American Federation of State, County and Municipal Employees, AFL–CIO v. Shapp and Kassab, 280 A.2d 375 (Decided June 25, 1971). Suit was brought to compel reinstatement of routine laborers employed by the State Highway Department, all of whom were discharged solely because of the political patronage system. The State Supreme Court held that such workers, hired at will as part of the political patronage system could be summarily discharged upon a change of administration for purely political patronage reasons. In that case, of course, the possible infringement on the right to vote and freedom of expression and political beliefs raise serious issues not present in this case.

The authorities are clear and I hold that even if this Court had jurisdiction under § 1343, the complaint would be subject to dismissal. The complaint does not allege a cause of action under Section 1983 because the plaintiffs under the alleged facts have no constitutional right to a statement of reasons for their discharge, prior notice or a hearing. *See generally,* Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439, 1454 (1968). Therefore, this suit is dismissed for lack of jurisdiction and because the complaint fails to state a cause of action.

The complaint does, however, make certain vague conclusionary allegations that possibly allege a discharge for constitutionally impermissible reasons. Paragraph 20 avers a denial of equal protection of the laws because plaintiffs were treated differently from fellow employees without a rational justification for such a difference. Although under federal "notice pleading" practice considerable freedom should be allowed in gen-

eralized averments, the allegations made here are not sufficiently specific. Also, paragraph 22 alleges a loss of reputation without alleging how this occurred or to what extent the plaintiffs suffered a loss of reputation.

 It has long been the law that general conclusory allegations unsupported by facts are insufficient to constitute a cause of action under § 1983. The plaintiff must allege specific facts to support his allegations. Kaufman v. Moss, 420 F.2d 1270, 1275–1276 (3rd Cir. 1970); Negrich v. Hohn, 379 F.2d 213 (3rd Cir. 1967); United States ex rel. Verde v. Case, 326 F.Supp. 701, 704 (E.D.Pa.1971); Pugliano v. Staziak, 231 F.Supp. 347 (W.D.Pa.1968), aff'd, 345 F.2d 797 (3rd Cir. 1965). Because plaintiffs may be able to state a cause of action for their discharges alleging a constitutionally impermissible reason beyond a denial of notice, statement of reasons, and an administrative level hearing prior to discharge, the dismissal will be without prejudice to file an amended complaint within thirty days.

In the event the complaint is amended other close questions will have to be decided which because of the present ruling need not be decided at this time. It appears clear that the county is not a person within the meaning of the Civil Rights Act and therefore cannot be sued for damages. United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84 (3rd Cir. 1969). While it is clear that judges are immune from liability for damages for acts committed within their judicial jurisdiction, Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), it is not clear whether this immunity would extend to the administrative duties of hiring and firing. There is the additional question of whether the judges are the statutory employers of the juvenile detention center workers. Unless the complaint is amended, these issues will become moot.