Stephen B. KURYLAS, Plaintiff,

v.

U. S. DEPARTMENT OF AGRICUL-
TURE et al., Defendants.

Civ. A. No. 723–73.

United States District Court,
District of Columbia.

Feb. 7, 1974.

William G. Hughes, Wheaton, Md., for Stephan B. Kurylas.

John R. Dugan, Asst. U. S. Atty., Washington, D. C., for the U. S. Dept. of Agriculture and others.

## MEMORANDUM OPINION AND ORDER

JOHN H. PRATT, District Judge.

This case is before the Court on defendants' motion to dismiss, or in the alternative, for summary judgment, and on plaintiff's motion for summary judgment. Plaintiff, Stephen B. Kurylas, D.V.M., seeks declaratory and injunctive relief as well as damages for alleged employment discrimination due to his national origin. Plaintiff has been employed by the defendant United States

Department of Agriculture (USDA) since 1951 and presently serves as a Supervisory Veterinary Medical Officer with the Animal and Plant Health Inspection Service of USDA. Dr. Kurylas, formerly a Polish citizen of Ukranian descent, is now a United States citizen.

Plaintiff Kurylas alleges a cause of action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and under 42 U.S.C. § 1981. Jurisdiction is laid in the Court pursuant to 28 U.S.C. § 1343(4), 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. §§ 2201, 2202.

### I. *Background.*

The present posture of this case requires a brief exposition of the essential facts herein. The events leading to this action began when defendant Bartie T. Woods, Jr., plaintiff's immediate supervisor, prepared an "Employee Appraisal" form, USDA Form C–MS–301, evaluating plaintiff's job performance during the period January 1, 1970 to May 31, 1971. With respect to Performance Evaluation Factor (PEF) 5, "Communicating Orally," defendant Woods rated plaintiff as "D" ("barely meets normal position requirements"). Upon receipt of his copy of the appraisal, plaintiff objected to this "D" rating. Informal attempts to rectify the situation failed and on June 28, 1971, plaintiff filed a formal Equal Employment Opportunity (EEO) complaint with USDA.

On July 6, 1972 a hearing was held before John B. Taylor, EEO Appeals Examiner for the U. S. Civil Service Commission, which inquired into the single issue of "[w]hether [plaintiff] was discriminated against because of national origin (Polish-American) by the agency assigning him a low performance rating." See Statement of Findings, Analysis and Recommended Decision in the Equal Employment Opportunity Complaint Case Of Dr. Stephen B. Kurylas at 4. As a result of the hearing the EEO Appeals Examiner recommended a finding that the plaintiff had been discriminated against because of national origin inasmuch as plaintiff's adverse rating was arrived at for reasons "unrelated to his actual ability." To remedy said discrimination, the Examiner proposed the following:

(1) That the Employee Appraisal Forms dated June 17, 1971 and February 25, 1972, be expunged from plaintiff's file.

(2) That a new Employee Appraisal Form be prepared for the period June 1, 1970 to the next scheduled rating, retaining the performance appraisal levels shown in section "B" of HE No. 2, dated February 25, 1972, omitting the narrative in section "F" referring to PEF 5, and rewriting the narrative in reference to PEF 16, to be compatible with the Examiner's findings.

(3) That the agency conduct a review to determine whether complainant had been denied equal consideration for promotion because of the low performance rating discussed above.

(4) That plaintiff be given a retroactive promotion if after the review, the agency determines that plaintiff would have been promoted but for the challenged ratings.

(5) That if the agency determines plaintiff was not disadvantaged and if plaintiff disagrees, then plaintiff should be advised he may file a formal complaint.

(6) That the Director, Office of EEO, "closely review and analyze the total files in this case concerning the roles played by Messrs. Woods and Mootz . . . to determine whether censuring action should be considered." (I Tr. 53–56)

On December 20, 1972 Jerome Shuman of USDA's Office of Equal Employment Opportunity specifically adopted these recommendations and notified Dr. Kurylas that the adopted remedy was the Department's final decision. Plaintiff was further informed of his various appeal

rights, including his right to file a civil suit within thirty days. Instead, plaintiff chose to await the results of the promised review of his promotion opportunities. When that review proved unsatisfactory, plaintiff filed the instant action on April 16, 1973.

II. *Cause of Action Under Title VII.*

In bringing this action, plaintiff first relies on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and in particular § 2000e–16(a) which prohibits "any discrimination based on race, color, religion, sex, or national origin" in connection with personnel actions affecting employees of certain federal government agencies. Section 2000e–16(b) places primary responsibility for the enforcement of subsection (a) with the Civil Service Commission in concert with the various departments and agencies covered by that subsection.

■ In addition to the administrative enforcement provided for in subsection (b), a person aggrieved by alleged discrimination and unsatisfied by the administrative resolution may bring a civil action in an appropriate district court "[w]ithin thirty days of receipt of notice of final action." In the instant case EEO issued what purported to be USDA's final order on December 20, 1972. Taking that date as the time of USDA's "final action," the plaintiff is clearly not timely in his action.

The plaintiff argues, however, that USDA's action did not become final until the time it advised plaintiff of the result of its review of the effects that the initial discrimination had upon his promotion possibilities, i. e., March 19, 1973. Plaintiff argues that this date marks the agency's "final action" and therefore his suit is timely.

■ The Court finds, however, that USDA's order of December 20, 1972 must be viewed as the date of final action with respect to plaintiff's formal complaint of discrimination. That complaint raised only the issue of the low evaluation received by plaintiff concern-

ing his ability to orally communicate. In addition, as noted above, the EEO hearing was specifically limited to that single issue. It is true that, upon the recommendation of the EEO Examiner and as part of its final remedy, USDA ordered a review of the effects the low performance evaluation had upon plaintiff's promotion opportunities. But the order also specifically spelled out the precise administrative remedy which plaintiff was to follow in the event he was unsatisfied with the results of that review:

> (2) that, if, after review, the agency determines that the complainant was not disadvantaged because of the appraisals . . . inform him of his right to file a formal complaint, waiving any time limitation, because such decision had its basis in and is a continuation of the present complaint.

See USDA's order of December 20, 1972 at 8 (I Tr. 65). Having chosen not to appeal the order of December 20, 1972, the plaintiff must be presumed to have accepted its provisions in toto. The plaintiff cannot be allowed to provisionally accept the terms of the agency's order, await the results of its mandated review, and then reject that part of the same order which established the nature of his recourse if unsatisfied with that review. The Court finds, therefore, that the order was "final action" when issued on December 20, 1972 and that plaintiff's attempt to raise a challenge at this time is untimely.

■ Moreover, it is clear from the administrative record that the issue of alleged disadvantage to plaintiff in his promotion opportunities was never specifically considered by the EEO. Since an EEO complaint raising the precise issue has never been filed, and thus no "final action" taken by the USDA with respect thereto, the plaintiff has no right to bring a civil suit, as to this particular issue, under § 2000e–16(c). Put in the context of general exhaustion principles, the plaintiff must first bring this issue before the EEO of USDA be-

fore filing his civil suit here. See Unemployment Compensation Commission of Territory of Alaska v. Aragon, 329 U.S. 143, 155, 67 S.Ct. 245, 91 L.Ed. 136 (1946); Glaziers' Local No. 558 v. NLRB, 132 U.S.App.D.C. 394, 408 F.2d 197, 203 (1969); Neisloss v. Bush, 110 U.S.App.D.C. 396, 293 F.2d 873 (1961). The thrust of the exhaustion principle is to afford the EEO of USDA the first opportunity to investigate, consider and rule on the issue of plaintiff's alleged promotion disadvantage. As the Supreme Court has recently reiterated:

> "it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages." (Christian v. New York State Department of Labor, Division of Employment, 414 U.S. 614, 622, 94 S.Ct. 747, 752, 39 L.Ed.2d 38 (1974).

The plaintiff in this case should be required to first pursue the administrative route laid out for him in the USDA's order of December 20, 1972. Otherwise, the Court is faced with determining questions which the agency itself has not fully addressed.

The Court concludes that plaintiff's cause of action under Title VII is both untimely, when viewed as a challenge to the USDA order of December 20, 1972, and premature, as to the issue of possible promotion disadvantage. The plaintiff's Title VII action should therefore be dismissed without prejudice to a timely renewal of said action upon the completion of the agency's action with respect to the issue of promotion disadvantage.

III. *Cause of Action Under Section 1981.*

■ Plaintiff has also alleged a cause of action under 42 U.S.C. § 1981. The exhaustion problem noted above in connection with Title VII does not foreclose a § 1981 action. Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); Young v. International Tel. & Tel. Co., 438 F.2d 757 (3rd Cir. 1971). Similarly, the time

limits for bringing suit to challenge an agency's final action under Title VII do not apply to § 1981 actions. Hackett v. McGuire Bros. Inc., 445 F.2d 442 (3rd Cir. 1971). Defendants raise a further issue by arguing that § 1981 does not apply to discrimination by the federal government. The weight of authority, however, is to the opposite effect. Penn v. Schlesinger, 490 F.2d 700 (5th Cir., 1973); see also, District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

■ A final issue, however, appears dispositive of plaintiff's § 1981 claim. Section 1981 was originally enacted as part of the Civil Rights Act of 1866, 14 Stat. 27, designed to enforce the then recently adopted Thirteenth Amendment. See Jones v. Alfred H. Mayer Co., 392 U.S. 409, 422–444, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). Thus, § 1981 is directed specifically at *racial* discrimination. The standard of § 1981 against which alleged discrimination is to be measured is the rights "enjoyed by white citizens." The weight of authority has therefore held that only non-whites have standing to bring an action under § 1981. Agnew v. City of Compton, 239 F.2d 226 (9th Cir. 1956), cert. denied, 353 U.S. 959, 77 S.Ct. 868, 12 L.Ed.2d 910 (1957); Perkins v. Banster, 190 F.Supp. 98 (D.Md.1960), aff'd 285 F.2d 426 (4th Cir.); Van Hoomisin v. Xerox Corp., 368 F.Supp. 829 (N.D.Cal. 1973); Abshire v. Chicago & E. I. R. Co., 352 F.Supp. 601 (N.D.Ill.1972); League of Academic Women v. Regents of Univ. of Calif., 343 F.Supp. 636 (N. D.Cal.1972); Marshall v. Plumbers and Steamfitters Local Union 60, 343 F. Supp. 70 (E.D.La.1972). Moreover, in those few cases where whites have been permitted to bring an action under § 1981, the complainants had alleged a wrong or infringement of their rights which was racially motivated. See Gannon v. Action, 303 F.Supp. 1240 (E.D. Mo.1969), aff'd in part, remanded in part on other grounds, 450 F.2d 1227 (8th Cir.); Central Presbyterian Church v. Black Liberation Front, 303 F.Supp.

894 (E.D.Mo.1969). Our research has not uncovered a single case which has entertained a § 1981 suit that did not allege some form of *racial* discrimination. The Court concludes that the plaintiff's allegation of discrimination due to his national origin is insufficient to sustain a cause of action under § 1981 and that his § 1981 action should therefore be dismissed.

Wherefore, for all the foregoing reasons, it is this 6th day of February, 1974,

Ordered, that defendants' motion to dismiss be, and the same hereby is, granted; and it is

Further ordered, the plaintiff's motion for summary judgment be, and the same hereby is, denied.