Herbert E. BODDORFF, John M. Barley, Isabella Johnson, as Executrix of the Estate of John A. Johnson, Gordon B. Lane, Howard E. Reighard, Jr., Harold W. Reinert

v.

PUBLICKER INDUSTRIES, INC., and its subsidiary Continental Distilling Corp. and John Doe and Jim Doe.

Civ. A. No. 79–4023.

United States District Court, E. D. Pennsylvania.

March 25, 1980.

Robert D. Kaplan, Andrea B. Wapner, Peter A. Gold, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for plaintiffs.

Harry Reagan, Francis M. Milone, Lawrence B. Fine, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 623 (ADEA), generally proscribes arbitrary discrimination based on age in hiring and discharging workers. *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). Claiming violations of this statute, plaintiffs instituted this action to recover for defendants' allegedly discriminatory and willful termination of their employment. Specifically, plaintiffs assert that defendants discriminatorily terminated them because of their age and replaced them with younger individuals[1], even though they, plaintiffs, were performing their jobs satisfactorily and had exemplary work records[2]. As recompense plaintiffs seek back pay with full retirement and pension benefits, liquidated damages and compensatory and punitive damages for "physical, emotional and mental injury and humiliation" which plaintiffs suffered as consequences of defendants' actions. The corporate defendants now move to dismiss part of the complaint.

First, defendants move to dismiss Count Two, in which plaintiffs claim that defendants' actions also violated the Civil Rights Act of 1866, 42 U.S.C. § 1981, which states, in pertinent part, that

---

[1] Plaintiff Boddorff, a manager of plant quality control at defendants' Linfield, Pennsylvania, distillery plant, worked from November 1945 until his termination in March 1978, when he was 62 years old.

Plaintiff Barley, a bonded warehouse manager at the same facility, worked from June 1967 until his termination in February 1978, when he was 53 years old.

Plaintiff Johnson, a maintenance supervisor at the same facility, worked from March 1958 until his termination in March 1978, when he was 59 years old. Johnson died in June 1978, and his executrix is a named plaintiff.

Plaintiff Lane, a maintenance supervisor at the same facility, worked from October 1958 until his termination in March 1978 when he was 60 years old.

Plaintiff Reighard, a plant superintendent at the same facility, worked from October 1952 until his termination in March 1978, when he was 60 years old.

Plaintiff Reinhard, a warehouse production manager at the same facility, worked from June 1942 until his termination in March 1978, when he was 60 years old.

Defendant Publicker Industries, Inc., is a Pennsylvania corporation engaged in the manufacture and distribution of industrial alcohol, chemicals and alcoholic beverages. Defendant Continental Distilling Corporation, a wholly-owned subsidiary of defendant Publicker, is a Delaware corporation engaged in the manufacture and distribution of alcoholic beverages.

[2] Plaintiffs invoke jurisdiction of the court pursuant to Section 7(b) of the ADEA, 29 U.S.C. § 626(b), Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), 28 U.S.C. § 1337 and 28 U.S.C. § 1343.

[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as enjoyed by white citizens
. . .

Enacted by virtue of the Thirteenth Amendment, the Civil Rights Act of 1866, from which § 1981 devolved, *Ex parte Virginia*, 100 U.S. 339, 25 L.Ed. 676 (1879), seeks to implement the Fourteenth and Fifteenth Amendments as well, *Siegel v. Ragen*, 180 F.2d 785 (6th Cir.), *cert. denied*, 339 U.S. 990, 70 S.Ct. 1015, 94 L.Ed. 1391 (1950), by conferring equality in civil rights before the law in all respects for all persons *within its provisions.*[3] *Basista v. Weir*, 340 F.2d 74 (3d Cir. 1965). *See also United States v. Cruikshank*, 92 U.S. 542, 23 L.Ed. 588 (1875). Passed by Congress immediately following the Civil War, the Act, as a statutory analog to the Thirteenth Amendment, clearly intended to afford blacks a civil status equivalent to white people. *Valle v. Stengel*, 176 F.2d 697 (3d Cir. 1949). The standard of comparison, "as enjoyed by white persons", speaks directly to race and does not concern disparity in treatment on the basis of religion, sex or national origin. Similarly, 42 U.S.C. § 1982 grants to all citizens "the same right" to purchase and lease property "as is enjoyed by white citizens". The Supreme Court has construed this language as "deal[ing] only with racial discrimination". *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968). In fact, the operative language of both § 1981 and § 1982 evolved from the original Act of 1866 and can be construed similarly. *Tillman v. Wheaton-Haven Recreational Association*, 410 U.S. 341, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973).

One of the original Act's proponents hailed the measure as a bellwether which would "break down all discrimination between *black* men and *white* men". Cong. Globe, 39 Cong., 1st Sess., 599 (Remarks of Sen. Trumbell of Illinois) (emphasis added). Consistently, the Supreme Court has interpreted § 1981 in terms of race. For example, in *Jones v. Alfred H. Mayer Co., supra*, the Court noted that

> when the House passed the . . . Act, it did so on the same assumption that had prevailed in the Senate: It was believed that it was approving a comprehensive statute forbidding all *racial* discrimination affecting the basic civil rights enumerated in the Act.

392 U.S. at 435, 88 S.Ct. at 2200–2201 (emphasis added and footnote omitted). Later the Court remarked that

> [t]he legislative history of the 1866 Act clearly indicates [a Congressional intention] to protect a limited category of rights, specifically defined in terms of *racial* equality. As originally proposed in the Senate, § 1 of the bill that became the 1866 Act did not contain the phrase "as is enjoyed by white citizens". That phrase was later added in committee in the House, apparently to emphasize the *racial* character of the rights being protected.

*Georgia v. Rachel*, 384 U.S. 780, 791, 86 S.Ct. 1783, 1789, 16 L.Ed.2d 925 (1966) (emphasis added and footnote omitted). Finally, in *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) the Supreme Court wrote that the Act

> on its face relates primarily to *racial* discrimination . . . § 1981 affords a federal remedy against discrimination in private employment on the basis of *race*.

*Id.* at 459, 95 S.Ct. at 1720 (emphasis added).[4] To hold that § 1981 embraces claims

---

**3.** Congress reenacted the 1866 Act without pertinent changes in 1870 *after* passage of the Fourteenth and Fifteenth Amendments.

**4.** *See also Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), *Virginia v. Rives*, 100

U.S. 313, 25 L.Ed. 667 (1880), and especially *McDonald v. Sante Fe Transportation Co.*, 427 U.S. 273, 295, 96 S.Ct. 2574, 2586, 49 L.Ed.2d 493 (1976) ("the Act was meant . . . to

of age discrimination would contradict not only decisions of virtually every circuit court of appeals,[5] but also the district courts in every circuit,[6] districts within this circuit,[7] and the judges within this district.[8] Because § 1981 is limited to claims of racial discrimination, plaintiffs' claims under this section must be dismissed for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

In Count Three plaintiffs accuse their former employers and two fictional defendants of

> intentionally, deliberately and invidiously act[ing] in concert and embark[ing] upon

and pursu[ing] a course of conduct, the goal of which was to deny plaintiffs . . [of] their right to the equal employment opportunities

guaranteed them under the ADEA, Fair Labor Standards Act of 1938, as amended, 29 U.S. § 215, and the Pennsylvania Human Relations Act of 1967, as amended, 43 P.S. § 955(a) (Purdon). These actions allegedly violated plaintiffs' rights under the Civil Rights Act of 1871, 42 U.S.C. § 1985(3). Defendants move to dismiss this count on the ground that plaintiffs fail to plead the conspiracy with requisite specificity. The

proscribe discrimination . . . against, or in favor of, any *race*") (emphasis added) and *Hague v. Committee for Industrial Organization,* 307 U.S. 496, 509, 59 S.Ct. 954, 961, 83 L.Ed. 1423 (1939) (purpose of the act was "to secure to the recently freed negroes all the civil rights secured to white men").

**5.** *See, for example, DeGraffenreid v. General Motors Assembly Division,* 558 F.2d 480 (8th Cir. 1977), *Patterson v. American Tobacco Co.,* 535 F.2d 257 (4th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976), *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 522 F.2d 1235 (7th Cir. 1975), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976), *Long v. Ford Motor Co.,* 496 F.2d 500 (6th Cir. 1974), *Arnold v. Tiffany,* 487 F.2d 216 (9th Cir. 1973), *cert. denied,* 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974).

**6.** In the *First Circuit, see Francis v. Lyman,* 108 F.Supp. 884 (D.Mass.1952), *aff'd,* 203 F.2d 809 (2d Cir.), *cert. denied,* 346 U.S. 835, 74 S.Ct. 43, 98 L.Ed. 357 (1953);
In the *Second Circuit, see Lofland v. Meyers,* 442 F.Supp. 955 (S.D.N.Y.1977);
In the *Fourth Circuit, see Martinez v. Hazelton Research Animals, Inc.,* 430 F.Supp. 186 (D.Md.1977) and *Perkins v. Banster,* 190 F.Supp. 98 (D.Md.) *aff'd,* 285 F.2d 426 (4th Cir. 1960);
In the *Fifth Circuit, see Guerra v. Roma Independent School District,* 444 F.Supp. 812 (S.D. Tex.1977), *Marshall v. Local 60, Plumbers & Steam Fitters Union,* 343 F.Supp. 70 (E.D.La. 1972);
In the *Sixth Circuit, see Bell v. St. Regis Paper Co.,* 425 F.Supp. 1126 (N.D.Ohio 1976);
In the *Seventh Circuit, see Plummer v. Chicago Journeyman Plumbers' Local Union No. 30,* 452 F.Supp. 1127 (N.D.Ill.1978), *Schetter v. Heim,* 300 F.Supp. 1070 (E.D.Wis.1969);
In the *Eighth Circuit, see Bergstrom v. Bergstrom,* 478 F.Supp. 434 (D.N.Dak.1979), *Fantroy, v. Greater St. Louis Council,* 478 F.Supp. 355 (E.D.Mo.1979), *Gay Lib v. University of*

*Missouri,* 416 F.Supp. 1350 (W.D.Mo.1976), *rev'd on other grounds,* 558 F.2d 848 (8th Cir. 1977), *cert. denied sub nom. Ratchford v. Gay Lib,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 789 (1978);
In the *Ninth Circuit, see Gradillas v. Hughes Aircraft Co.,* 407 F.Supp. 865 (D.Ariz.1975), *League of Academic Women Regents v. University of California,* 343 F.Supp. 636 (N.D.Cal. 1972).
In the *Tenth Circuit, see Boling v. National Zinc Co.,* 435 F.Supp. 18 (N.D.Okl.1976), *Baca v. Butz,* 394 F.Supp. 888 (D.N.M.1975);
In the *D.C. Circuit, see Saad v. Burns International Security Services, Inc.,* 456 F.Supp. 33 (D.D.C.1978) and *Kurylas v. United States Department of Agriculture,* 373 F.Supp. 1072 (D.D.C.1974), *aff'd,* 169 U.S.App.D.C. 58, 514 F.2d 894 (1975).

**7.** *See, for example, Budinsky v. Corning Glass Works,* 425 F.Supp. 786 (W.D.Pa.1977), *Jackson v. University of Pittsburgh,* 405 F.Supp. 607 (W.D.Pa.1975), *Vera v. Bethlehem Steel Corp.,* 448 F.Supp. 610 (M.D.Pa.1978).

**8.** *See, for example, Milner v. National School of Health Technology,* 409 F.Supp. 1389 (E.D. Pa.1976) (Lord, Ch. J.); *Johnson v. County of Chester,* 413 F.Supp. 1299 (E.D.Pa.1976) (Luongo, J.); *Beamon v. W. B. Saunders Co.,* 413 F.Supp. 1167 (E.D.Pa.1976) (Fullam, J.); *Rackin v. University of Pennsylvania,* 386 F.Supp. 992 (E.D.Pa.1974) (Weiner, J.); *Martinez v. Bethlehem Steel Corp.,* 78 F.R.D. 125 (E.D.Pa. 1978) (Troutman, J.); *Williams v. Patton,* 410 F.Supp. 1 (E.D.Pa.1976) (VanArtsdalen, J.); *Ludwig v. Quebecor Dailies, Inc.,* 475 F.Supp. 57 (E.D.Pa.1979) (Huyett, J.); *Holton v. Crozer-Chester Medical Center,* 419 F.Supp. 334 (E.D. Pa.), *rev'd on other grounds,* 560 F.2d 575 (3d Cir. 1976) (Newcomer, J.); *Presseissen v. Swarthmore College,* 71 F.R.D. 34 (E.D.Pa. 1976) (Bechtle, J.); *Jones v. United Gas Improvement Corp.,* 68 F.R.D. 1 (E.D.Pa.1975) (Fogel, J.).

rule in this circuit has been established beyond contention.[9] Civil rights complaints must be pleaded "with specificity". Other circuits,[10] other districts within this circuit,[11] and virtually every judge in this district[12] have so held.

In the complaint at bar the only facts concerning this conspiracy have been quoted above. This allegation is patently insufficient to establish a conspiracy in a civil rights matter "with specificity", particularly in light of the fact that the two individual defendants are fictional. Where plaintiffs accuse law enforcement officers or hospital personnel, for example, of such

actions, the monolithic appearance and prodigious number of such defendants render use of fictional defendants understandable and perhaps necessary. But where the fictional defendants acted as plaintiffs' supervisors, requiring plaintiffs to identify them by name cannot be considered an unfair responsibility. At the very least, plaintiffs could have named those individuals who direct, formulate or implement corporate policies. Complaints with similarly vague and conclusory allegations have been dismissed regularly. For example, in *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir. 1976), plaintiff alleged only that de-

---

**9.** *Hall v. Pennsylvania State Police*, 570 F.2d 86 (3d Cir. 1978), *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir. 1976), *Curtis v. Everette*, 489 F.2d 516 (3d Cir. 1973), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974), *Esser v. Weller*, 467 F.2d 949 (3d Cir. 1972), *Marvin v. Pinto*, 463 F.2d 583 (3d Cir. 1972), *Robinson v. McCorkle*, 462 F.2d 111 (3d Cir.), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972), *Carr v. Sharp*, 454 F.2d 271 (3d Cir. 1972), *Marcedes v. Barrett*, 453 F.2d 391 (2d Cir. 1972), *United States ex rel. Birnbaum v. Dolan*, 452 F.2d 1078 (3d Cir. 1971), *Fletcher v. Hook*, 446 F.2d 14 (3d Cir. 1971), *Moore v. Buck*, 443 F.2d 25 (3d Cir. 1971), *Oliver v. Governor of Pennsylvania*, 442 F.2d 1347 (3d Cir.), *cert. denied*, 404 U.S. 1002, 92 S.Ct. 570, 30 L.Ed.2d 555 (1971), *Gaito v. Ellenbogen*, 425 F.2d 845 (3d Cir. 1970), *Kauffman v. Moss*, 420 F.2d 1270 (3d Cir.), *cert. denied*, 400 U.S. 486, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970), *Goslee v. Crawford*, 411 F.2d 1200 (3d Cir. 1969), *Rodes v. Municipal Authority*, 409 F.2d 16 (3d Cir.), *cert. denied*, 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 114 (1969), *Winkler v. Pringle*, 387 F.2d 380 (3d Cir. 1967), *Negrich v. Hohn*, 379 F.2d 213 (3d Cir. 1967), *United States ex rel. Hoge v. Bolsinger*, 311 F.2d 215 (3d Cir. 1962).

**10.** *See, for example, Francis-Sobil v. University of Maine*, 597 F.2d 15 (1st Cir. 1979), *Martin v. New York State Department of Mental Hygiene*, 588 F.2d 371 (2d Cir. 1978), *Cohen v. Illinois Institute of Technology*, 581 F.2d 658 (7th Cir. 1978), *cert. denied*, 439 U.S. 1058, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979), *James v. Rumsfeld*, 580 F.2d 224 (6th Cir. 1978), *Uston v. Airport Casino, Inc.*, 564 F.2d 1216 (9th Cir. 1977), *Nickens v. White*, 536 F.2d 802 (8th Cir. 1976), *Hughes v. Ranger Fuel Corp.*, 467 F.2d 46 (4th Cir. 1972), *Coopersmith v. Supreme Court, State of Colorado*, 465 F.2d 993 (10th Cir. 1972), *Morris v. Alabama State Department of Industrial Relations*, 435 F.2d 137 (5th Cir. 1970).

**11.** *See, for example, Scott v. University of Delaware*, 385 F.Supp. 937 (D.Del.1974), *Sixth Camden Corp. v. Township of Evesham, Burlington County*, 420 F.Supp. 709 (D.N.J.1976), *Vasquez v. Ferre*, 404 F.Supp. 815 (D.N.J.1975), *Walker v. University of Pittsburgh*, 457 F.Supp. 1000 (W.D.Pa.1977), *MacMurray v. Board of Trustees of Bloomsburg State College*, 428 F.Supp. 1171 (M.D.Pa.1977), *Esser v. Jeffes*, 416 F.Supp. 719 (M.D.Pa.1975).

**12.** *Krier v. Amodio*, 441 F.Supp. 181 (E.D.Pa. 1977) (Lord, Ch. J.); *Meyer v. Curran*, 397 F.Supp. 512 (E.D.Pa.1973) (Luongo, J.); *Burke v. Green*, 422 F.Supp. 350 (E.D.Pa.1976) (Higginbotham, J.); *Mitchell v. Hendricks*, 431 F.Supp. 1295 (E.D.Pa.1977) (Davis, J.); *Dawes v. Philadelphia Gas Commission*, 421 F.Supp. 806 (E.D.Pa.1976) (Fullam, J.); *Burak v. Sprague*, 335 F.Supp. 347 (E.D.Pa.1971) (Masterson, J.); *Eisman v. Pan American World Airlines*, 336 F.Supp. 543 (E.D.Pa.1971) (Troutman, J.); *Mimms v. Philadelphia Newspaper, Inc.*, 352 F.Supp. 862 (E.D.Pa.1972) (Becker, J.); *Mason v. County of Delaware*, 331 F.Supp. 1010 (E.D.Pa.1971) (VanArtsdalen, J.); *Matherly v. Lamb*, 414 F.Supp. 364 (E.D.Pa.1976) (Huyett, J.); *Pitrone v. Mercadante*, 420 F. Supp. 1384 (E.D.Pa.1976), *vacated on other grounds*, 572 F.2d 98 (3d Cir. 1978), *cert. denied sub nom. Warminster Township v. Pitrone*, 439 U.S. 827, 99 S.Ct. 99, 58 L.Ed.2d 120 (1978) (Ditter, J.); *Euster v. Pennsylvania State Horse Racing Commission*, 431 F.Supp. 828 (E.D.Pa.1977) (Gorbey, J.); *Reiff v. Commonwealth of Pennsylvania*, 397 F. Supp. 345 (E.D.Pa.1975) (Broderick, J.); *Culp v. Devlin*, 437 F.Supp. 20 (E.D.Pa.1977) (Newcomer, J.); *Downs v. Department of Public Welfare*, 368 F.Supp. 454 (E.D.Pa.1973) (Green, J.); *Coggins v. McQueen*, 447 F.Supp. 960 (E.D. Pa.1978) (Bechtle, J.); *Miller & Son Paving, Inc. v. Wrightstown Township Civic Association*, 443 F.Supp. 1268 (E.D.Pa.1978) (McGlynn, J.)

fendants had terminated his employment because he had "exercised his First Amendment privileges". In *Marvin v. Pinto,* 463 F.2d 583 (3d Cir. 1972) plaintiff, appearing *pro se,* alleged only that prison conditions were "worser than in ghetto areas" and that food was "not fit for human consumption". In *Carr v. Sharp,* 454 F.2d 271 (3d Cir. 1971), plaintiff's allegations only included "vicious discrimination with forethought of malice", "deprivation of fair impartial hearing by suppressing criminal evidence", "obstruction of the administration of justice", and "conspiracy to inflict discrimination". In *Marcedes v. Barrett,* 453 F.2d 391 (3d Cir. 1971), still another *pro se* plaintiff alleged only that defendants "confederate[d] and conspire[d] with [another defendant] in obstructing and suppressing Plaintiff's right to legal assistance". In every instance the Court of Appeals sustained a dismissal for failure to plead "with specificity". In view of judicial solicitude evinced in this circuit for *pro se* litigants,[13] these results compel dismissal where, as here, counsel represent plaintiffs. To withstand a motion to dismiss, a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefor. *Hall v. Pennsylvania State Police,* 570 F.2d 86 (3d Cir. 1978), *Turley v. Hall's Motor Transit Co.,* 296 F.Supp. 1183 (M.D.Pa.1969). Because plaintiffs have failed to meet this minimal requirement Count Three must be dismissed.[14]

13. *Rotolo v. Borough of Charleroi, supra, Gray v. Creamer,* 465 F.2d 179 (3d Cir. 1972), *United States ex rel. Birnbaum v. Dolan, supra, United States ex rel. Gittlemacker v. County of Philadelphia,* 413 F.2d 84 (3d Cir. 1969), *cert. denied,* 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970), *Lockhart v. Hoenstine,* 411 F.2d 455 (3d Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969), *Negrich v. Hohn, supra.*

14. We neither reach nor decide defendants' argument that claims of age discrimination are not cognizable under 42 U.S.C. § 1985(3), but see *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) and *Martin v. Easton Publishing Co.,* 478 F.Supp. 796 (E.D.Pa. 1979).

■ Finally, defendants move to strike plaintiffs' prayer for compensatory and punitive damages under the ADEA on the basis of *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3d Cir. 1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978), which held that these damages cannot be awarded properly in ADEA actions. The ADEA provides, in pertinent part, that

[a]mounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: Provided, That liquidated damages shall be payable in cases of willful violations.

29 U.S.C. § 626(b). The Act also allows courts to grant such "legal or equitable relief as may be appropriate to effectuate the purposes of this chapter". 29 U.S.C. § 626(b). The purpose of the ADEA is to make discrimination victims whole, *Rogers v. Exxon Research & Engineering Co., supra,* and to "restore [them] to the position they would have occupied but for the intervening unlawful conduct of [their] employer". *Rodriguez v. Taylor,* 569 F.2d 1231 (3d Cir. 1977). Allowing damages greater than those specifically enumerated within the ADEA would make plaintiffs more than "whole". Additionally, the conciliation process carefully infused into the jealously guarded within the act[15] would be under-

15. The administrative procedure outlined in the ADEA has been described this way:

[R]esort must first be had to administrative remedies before a private suit may be filed. Any individual who wishes to sue under the ADEA must give the Secretary of Labor sixty (60) days notice of intent to sue. Upon receipt of such notice, the Secretary is directed to "seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference and persuasion." 29 U.S.C. § 626(d). If such efforts fail, the Secretary may bring an action under the statute. Most significantly, the right to bring a private suit terminates upon commencement of an action by the Secretary. § 626(c). Thus, the entire thrust of the ADEA's enforcement provision is that private lawsuits are secondary to ad-

mined, and the administrative machinery established therefor would be further encumbered with no countervailing salutory effect. *Rogers v. Exxon Research & Engineering Co., supra.* If Congress had intended to provide for compensatory and punitive damages, it could have specifically so stated, and this silence is

> consistent with legislative intent to abstain from introducing a volatile ingredient into the tripartite negotiations involving the Secretary, employee and employer.

*Dean v. American Security Insurance Co.,* 559 F.2d 1036, 1039 (5th Cir. 1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). *Cf.* Civil Rights Act of 1968, 42 U.S.C. § 3612(c) ("[t]he Court . . may award to the plaintiff actual damages and not more than $1000 punitive damages . . .").

Moreover, the language allowing courts to grant "such legal or equitable relief" [16] is circumscribed by reference to enforcement procedures authorized by the Fair Labor Standards Act and the statutory acknowledgement that amounts paid to an employee as a result of discrimination offending the statute are treated as unpaid minimum wages or unpaid overtime compensation. The Supreme Court has indicated that the ADEA is to be enforced according to the "powers, remedies and procedures" of the Fair Labor Standards Act, *Lorillard v. Pons,* 434 U.S. at 580, 98 S.Ct. at 869, and lower courts interpreting the Fair Labor Standards Act have not awarded damages other than those specifically provided in this statute. *Martinez v. Behring's Bearing Service, Inc.,* 501 F.2d 104 (5th Cir. 1974), *Powell v. Washington Post Co.,* 105 U.S. App.D.C. 374, 267 F.2d 561, *cert. denied,* 360 U.S. 930, 79 S.Ct. 1449, 3 L.Ed.2d 1544 (1959), *Bonner v. Elizabeth Arden, Inc.,* 177 F.2d 703 (2d Cir. 1949).

Finally, the two primary purposes of the ADEA, making the victim of age discrimination whole and deterring future violations, *Rodriguez v. Taylor, supra,* can be effected without reference to compensatory or punitive damages. An employee is made "whole" upon receipt of back pay and benefits. Deterrence can be assured when courts impose the double damage liability for willful violations. See 29 U.S.C. § 626 and compare with 113 Cong.Rec. 7076, 31250 (1967) (Remarks of Sen. Javits of New York) ("the criminal penalty [provided in the Fair Labor Standards Act] in case of willful violation has been eliminated and a double damage liability substituted. This will furnish an effective deterrent to willful violations.") *See also Zinger v. Blanchette,* 549 F.2d 901 (3d Cir. 1977).

Two other judges in this district have disallowed compensatory and punitive damages in an ADEA action. *Platt v. Burroughs Corp.,* 424 F.Supp. 1329 (E.D.Pa. 1976) and *Wagner v. Sperry Univac,* 458 F.Supp. 505 (E.D.Pa.1978). Plaintiffs urge this Court to follow contrary rulings in other districts. In view of a controlling decision by the court of appeals for this circuit and the overwhelming precedent in other circuits, this course is neither viable nor advisable. *See Wagner v. Sperry Univac,* 458 F.Supp. at 517.

In the labor law context, award of punitive damages has also been rejected. A plaintiff in a fair representation suit cannot recover punitive damages under the Railway Labor Act, 45 U.S.C. § 151, *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979), or under the Labor Management Relations Act, 29 U.S.C. § 185, *Dian v. United Steelworkers of America,* 486 F.Supp. 700 (E.D.Pa.1980). In view of the fact that the purpose of fair representation suits under both of these acts is, like the ADEA, to make plaintiffs "whole", eliminating a potentially disruptive remedy from the labor acts suggests a similar result in the ADEA.

ministrative remedies and suits brought by the Secretary of Labor.
*Slatin v. Stanford Research Institute,* 590 F.2d 1292, 1296 (4th Cir. 1979).

**16.** Most courts allowing compensatory and punitive damages predicate their decision on this language. See cases cited *infra* at note 19.

■ To date only three other circuit courts of appeals appear to have decided the issue. Each of these courts,[17] as well as district courts in two other circuits,[18] agree with the conclusion here reached. In the other five circuits, district courts have adopted both interpretations,[19] but the decisions sanctioning award of punitive and compensatory damages are inferior in number. Clearly, in this circuit punitive and compensatory damages may not be awarded to plaintiffs suing under the ADEA. Accordingly, plaintiffs' claim for compensatory and punitive damages will be stricken.

In deciding the issues here involved, we have consciously over-documented our conclusions with the hope the precedential guidance thus afforded will, in the future, reduce the number of occasions on which like or similar issues will have to be decided or redecided at least by the judges of this district.

---

**17.** *See Slatin v. Stanford Research Institute, supra, Vasquez v. Eastern Airlines, Inc.*, 579 F.2d 107 (1st Cir. 1978), and *Dean v. American Security Insurance Co., supra.*

**18.** *See, for example, Carter v. Marshall*, 457 F.Supp. 38 (D.D.C.1978) and *Catlett v. Owens Illinois, Inc.*, 454 F.Supp. 358 (W.D.Mo.1978).

**19.** In the *Second Circuit*, compare *Travers v. Corning Glass Works*, 76 F.R.D. 431 (S.D.N.Y. 1977) with *Flynn v. Morgan Guaranty Trust Co. of New York*, 463 F.Supp. 676 (E.D.N.Y.1979) and *Postemski v. Pratt & Whitney Aircraft*, 443 F.Supp. 101 (D.Conn.1977);

In the *Sixth Circuit*, compare *Riddle v. Getty Refining & Marketing Co.*, 460 F.Supp. 678 (N.D.Ohio 1978), *Dunwodie v. Chrysler Corp.*, 459 F.Supp. 971 (E.D.Mich.1978) and *Looney v. Commercial Union Assurance Cos.*, 428

F.Supp. 533 (E.D.Mich.1977) with *Gifford v. Diagnostics*, 458 F.Supp. 462 (N.D.Ohio 1978);

In the *Seventh Circuit*, compare *Stevenson v. J. C. Penney Co.*, 464 F.Supp. 945 (N.D.Ill.1979) with *Morton v. Sheboygan Memorial Hospital*, 458 F.Supp. 804 (D.Wis.1978);

In the *Ninth Circuit*, compare *Ellis v. Philippine Airlines*, 443 F.Supp. 251 (N.D.Cal.1977) and *Sant v. Mack Trucks, Inc.*, 424 F.Supp..621 (N.D.Cal.1976) with *Hassan v. Delta Orthopedic Medical Group, Inc.*, 476 F.Supp. 1063 (E.D. Cal.1979);

In the *Tenth Circuit*, compare *Hannon v. Continental National Bank*, 427 F.Supp. 215 (D.Colo.1977) with *Kennedy v. Mountain States Telephone & Telegraph Co.*, 449 F.Supp. 1008 (D.Colo.1978).