Mary HOLTON et al.

v.

**CROZER–CHESTER MEDICAL
CENTER et al.**

Civ. A. No. 76–618.

United States District Court,
E. D. Pennsylvania.

June 30, 1976.

Doris J. Dabrowski, Delaware County Legal Assistance Assoc., Inc., Chester, Pa., for plaintiffs.

John W. Wellman, Steven G. Brown, Media, Pa., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This action was brought by the plaintiffs to challenge Crozer-Chester Medical Center's policy of refusing to perform sterilizations for adult, married women without their husbands' consent. Plaintiffs have alleged that this policy violates their constitutional rights of personal privacy, equal protection and due process under the Fourth, Fifth, Ninth, Thirteenth and Fourteenth Amendments to the Constitution of the United States.

Defendants Crozer-Chester Medical Center, its Maternal and Infant Care Clinic, Dr.

James Loucks, and Dr. Marshall Klaven have filed a motion to dismiss the complaint for lack of subject matter jurisdiction. Plaintiffs have alleged jurisdiction under 28 U.S.C. § 1343 for claims arising under the Civil Rights Acts, 42 U.S.C. §§ 1981 and 1983, and under 28 U.S.C. § 1331, for claims arising under the Constitution where the amount in controversy exceeds ten thousand dollars ($10,000). Since we find that none of the asserted jurisdictional statutes properly applies in this case, we will grant the defendants' motion to dismiss.

■ We can easily dispose of plaintiffs' contention that jurisdiction can be premised on the basis of a cause of action under 42 U.S.C. § 1981.[1] Section 1981 pertains exclusively to discrimination on the basis of race or alienage. *Rackin v. University of Pennsylvania,* 386 F.Supp. 992 (E.D.Pa.1974); *League of Academic Women v. Regents of the University of California,* 343 F.Supp. 636 (N.D.Cal.1972). Section 1981 has been extended to claims of racial discrimination brought on behalf of whites as well as blacks. See *Spiess v. C. Itoh & Co.,* 408 F.Supp. 916 (S.D.Texas, 1976); *Central Presbyterian Church v. Black Liberation Front,* 303 F.Supp. 894 (E.D.Mo.1969). The plaintiffs have also cited *Parmer v. National Cash Register Co.,* 346 F.Supp. 1043 (S.D. Ohio 1972), where the court refused to dismiss sex discrimination claims brought under section 1981. This case apparently is wrongly decided, and the court offers no satisfactory reasons for its ruling. We decline to follow *Parmer,* and reiterate our holding that section 1981 is limited to claims based on race or alienage. Since the plaintiffs here make no claims of constitutional violations based on race or alienage, their complaint does not ·state a cause of action under section 1981.

■ Plaintiffs also contend that jurisdiction can be based on 28 U.S.C. § 1331, providing federal jurisdiction over cases arising under the Constitution, laws, or treaties of the United States, where the amount in controversy exceeds $10,000. In opposing jurisdiction under section 1331, the defendants have argued that the amount in controversy requirement is not met in this case. To dismiss a complaint for failure to satisfy the jurisdictional amount, a court must be convinced to a legal certainty that the plaintiffs' claim is really for less than the jurisdictional amount. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938). The plaintiffs here claim that the defendants unconstitutionally refuse to perform sterilizations without spousal consent, and we cannot say to a legal certainty that these claims do not satisfy the jurisdictional amount requirement.

■ Nevertheless, section 1331 does not provide jurisdiction in this case. Claims brought under the Bill of Rights or the Fourteenth Amendment require a showing of government involvement in the challenged activity. These constitutional provisions are limitations on government activity, not means of regulating the behavior of private individuals. See *Greenya v. George Washington University,* 167 U.S.App.D.C. 379, 512 F.2d 556, 559 (D.C.Cir.), cert. denied, 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 376 (1975); *Blouin v. Loyola University,* 506 F.2d 20 (5th Cir. 1975); *Driscoll v. International Union of Operating Engineers, Local 139,* 484 F.2d 682, 689–91 (7th Cir. 1973), cert. denied, 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575. We will discuss the state action question in the remainder of this opinion. Suffice it to say at this point that our conclusion is that the spousal consent policy of Crozer-Chester Medical Center is not sufficiently imbued with governmental activity to bring into play the Bill of Rights or the Fourteenth Amendment.

---

1. Section 1981 provides as follows:

 "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1981.

Thus, the only possible basis for section 1331 jurisdiction is the plaintiffs' claim based on the Thirteenth Amendment. The Thirteenth Amendment not only prohibits governmental action supporting slavery or involuntary servitude, it operates as an absolute prohibition of slavery or involuntary servitude in the United States. *Jones v. Mayer*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). The plaintiffs contend that the hospital's policy subjects a wife to involuntary servitude by subordinating her to the control of her husband and compelling her to bear his children. This argument is without merit. A hospital's policy of refusing to perform sterilizations without spousal consent does not create the type of compulsion that is prohibited by the Thirteenth Amendment, nor does it constitute a badge and incident of slavery. A woman is free to go to another hospital to obtain a sterilization with or without her husband's consent. Moreover, the hospital's policy is not related in any way to discrimination against an oppressed racial group. The plaintiffs have cited no cases to support their argument, and we hold that their complaint does not state a cause of action under the Thirteenth Amendment. Therefore, this court does not have jurisdiction under 28 U.S.C. § 1331.

The plaintiffs' most strongly asserted argument for jurisdiction is that jurisdiction can be based on 28 U.S.C. § 1343 because their complaint states a cause of action under 42 U.S.C. § 1983. That section provides as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

The plaintiffs contend that Crozer-Chester's policy of requiring spousal consent for steri-

lizations has deprived them of rights, privileges and immunities guaranteed by the Constitution. However, an essential element of an action under section 1983 is that the allegedly unconstitutional act be performed under color of state law. As we have noted previously, governmental action also is a prerequisite to claims based upon the Bill of Rights or the Fourteenth Amendment. The defendants have argued strenuously that the policy of requiring spousal consent for sterilizations is a purely private action outside the scope of section 1983 and Constitutional limitations. This is the central issue raised by the defendants' motion to dismiss.

There are numerous reported decisions dealing with the state action issue as applied to hospitals and similar institutions. However, before considering those decisions, we should review the leading decisions of the United States Supreme Court in the state action area. In *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), the Court concluded that discrimination practiced by a privately-owned restaurant located in a public parking facility was state action under the Fourteenth Amendment. The Court found that the State had "so far insinuated itself" into the operations of the restaurant that the State became a joint participant in the challenged activity. 365 U.S. at 725, 81 S.Ct. 856. This finding was based on a number of facts and circumstances, such as the existence of a lessor-lessee relationship between the Parking Authority and the restaurant, the public ownership of the land and building, the fact that 15% of the cost of the building was supplied by public funds, and the Parking Authority's retained responsibility for maintenance and repairs of the entire building.

Two more recent Supreme Court decisions have reaffirmed the holding in *Burton*, although in both cases the Court held that no state action was present. In *Moose Lodge v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), the Supreme Court held that the licensing and detailed regulation of the Moose Lodge by the Penn-

sylvania Liquor Control Board could not be said to in any way foster or encourage racial discrimination. Nor could it be said to make the State in any realistic sense a partner or even a joint venturer in the club's enterprise. 407 U.S at 176–77, 92 S.Ct. 1965. The Court distinguished *Burton* by noting that the facts revealed "nothing approaching the symbiotic relationship between lessor and lessee that was present in *Burton.*" 407 U.S. at 175, 92 S.Ct. at 1972. Similarly, in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), the Court found that there was no symbiotic relationship between the state and the defendant public utility, and that the State was not sufficiently connected to the particular activity challenged by the plaintiff to make that activity "state action" for purposes of the Fourteenth Amendment, 419 U.S. at 357–59, 95 S.Ct. 449.

■ An analysis of these three Supreme Court opinions leads to the conclusion that there are two different methods for satisfying the state action requirement. First, if the plaintiff establishes a nexus between the state and the particular activity being challenged, that activity will be considered state action. Second, if the plaintiff proves the existence of a symbiotic relationship between the State and the private party defendant, then any activity of that private party will be considered state action. See

*Rackin v. University of Pennsylvania,* 386 F.Supp. 992, 1002–04 (E.D.Pa.1974).[2]

■ The plaintiffs in this case have not presented evidence or allegations that either the Commonwealth of Pennsylvania or the federal government have in any way supported Crozer-Chester's policy of requiring spousal consent for sterilizations. The evidence presented to this Court at a hearing for a temporary restraining order indicated that the hospital's policy was formulated by members of the Department of Obstetrics and Gynecology, the hospital administration, and a consulting attorney, without any government involvement. Moreover, the fact that Crozer-Chester is subject to significant state regulation does not demonstrate that the state was involved with the hospital's spousal consent policy, since plaintiffs' counsel have not pointed out any regulation or rule concerning sterilizations or spousal consent. Even tacit approval by the state of the hospital's policy would not establish a sufficient connection between the state and the policy to justify a finding of state action unless the initiative behind the spousal consent policy came from the state. See *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Here there is nothing to suggest that the state encouraged Crozer-Chester to adopt a policy of requiring spousal consent for sterilizations.

---

**2.** Two other arguments for finding state action are that the hospital performs a public function because it provides an essential service, or that the hospital enjoys a monopoly position. *See Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). Both of these possible grounds for finding state action have been severely limited by the Supreme Court's decision in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Furnishing health services is not an activity traditionally associated with governments. In fact most health services in this country are provided from private sources. *See Barrett v. United Hospital,* 376 F.Supp. 791 (S.D.N.Y.1974), aff'd, 506 F.2d 1395 (2d Cir. 1974). Consequently, operation of a private hospital is no more an exercise of state action than is the operation of a public utility, which was held not to be a "public function" in *Jackson. See* 419 U.S. at 352–53, 95 S.Ct. 449.

The Court in *Jackson* also rejected the plaintiff's contention that the defendant's monopoly status required a finding of state action:

"As a factual matter, it may well be doubted that the State ever granted or guaranteed Metropolitan a monopoly. But assuming that it had, this fact is not determinative in considering whether Metropolitan's termination of service to petitioner was 'state action' for purposes of the Fourteenth Amendment." 419 U.S. at 351–52, 95 S.Ct. at 454.

Here there is no evidence whatsoever that the state conferred monopoly status on Crozer-Chester, and the fact that Crozer-Chester actually may have a monopoly position certainly is not enough to support a finding of state action. *See Taylor v. St. Vincent Hospital,* 523 F.2d 75 (9th Cir. 1975).

Since the plaintiffs cannot show a connection between the state and the particular action being challenged, they must demonstrate that the government has so insinuated itself into the hospital's operations that all of the hospital's activities properly can be considered state action. The plaintiffs have argued that the importance of government funding, government regulation, and government tax exemptions compel a finding that Crozer-Chester Medical Center and the Commonwealth of Pennsylvania are joint participants.

Crozer-Chester Medical Center is a private, non-profit hospital, built on privately donated land, and administered on a day-to-day basis by a Board of Directors, none of whose members are government appointees. Crozer-Chester has received more than one million dollars of Hill-Burton funds since 1963 for construction costs, and approximately eight percent of its operating budget is supplied by federal, state or county grants.[3] In the fiscal year ending June 30, 1975, Crozer-Chester received nearly ten million dollars in Medicare and Medicaid payments, and more than seven million dollars from Blue Cross.[4] As a participant in the Hill-Burton program, Crozer-Chester is subject to numerous federal statutes. For example, it is required to meet state standards of maintenance and operation, to furnish community service, and to provide a reasonable volume of service for persons unable to pay. See generally 42 U.S.C. § 291 et seq.; 42 C.F.R. Part 53. Similar restrictions and regulations also are required in order to qualify for Medicare and Medicaid payments. See generally 42 U.S.C. §§ 1395 et seq.; 42 U.S.C. § 1396 et seq. These restrictions include limiting payments to the reasonable cost of the services provided or the customary charges for such services, 42 U.S.C. § 1395f(b), prohibiting payments for unreasonable or unnecessary services, 42 U.S.C. § 1395y(a)(1), and authorizing review of proposed hospital capital expenditures by the Secretary of Health, Education and Welfare, 42 U.S.C. § 1320a–1. The Medicare and Medicaid programs contain many more provisions too numerous to mention, which affect participating hospitals.[5] Crozer-Chester also must comply with provisions of the Pennsylvania Welfare Code, 62 P.S. § 101 et seq. Contracts between Crozer-Chester and hospital insurance plan corporations such as Blue Cross are subject to the approval of the Pennsylvania Department of Insurance. 40 P.S. § 6121 et seq. Finally, Crozer-Chester is exempt from state and federal taxes. See 72 P.S. § 5020–204(a)(3); Int.Rev.Code § 501(c)(3).

This brief description of some of the entanglements between Crozer-Chester Medical Center and state and federal government shows that Crozer-Chester, like other private hospitals, obtains financial support from government and is subjected to comprehensive regulation on both the state and federal level. Nevertheless, most courts that have considered the state action issue

---

**3.** One of these grants represents the major source of funding for the Maternal and Infant Care Clinic. This clinic provides medical care before and after delivery on an out-patient basis, and is part of the state's plan for providing maternal and child care services. Each of the named plaintiffs in this action was a patient in the Maternal and Infant Care Clinic when she requested a sterilization. Although patients in the Clinic normally have in-patient services performed at Crozer-Chester, the testimony indicated that a patient could have in-patient care elsewhere, and continue as an out-patient at the Clinic. Since sterilization is an in-patient procedure performed in the hospital, under the hospital's rules, and not in the Maternal and Infant Care Clinic, the substantial government involvement with the Clinic is not directly related to the hospital's spousal consent policy. Of course, because the Clinic is part of the Crozer-Chester Medical Center, government contacts with the Clinic must be considered in determining the over-all relationship between the hospital and the government for state action purposes.

**4.** Total revenues for Crozer-Chester Medical Center in that year were approximately 26.4 million dollars.

**5.** Crozer-Chester's participation in the Medicaid program saves the state the expense of transporting eligible persons to other available facilities. See 45 C.F.R. § 249.10(a)(5)(ii); Smith v. Vowell, 379 F.Supp. 139 (W.D. Tex.) aff'd, 504 F.2d 759 (5th Cir. 1974).

as applied to private hospitals have concluded that the activities of private hospitals generally do not meet the state action requirement.

Some of these cases suggest that state action is present only if the state is involved with or even encourages the particular activity being challenged. For example, in *Barrett v. United Hospital*, 376 F.Supp. 791 (S.D.N.Y.1974), aff'd, 506 F.2d 1395 (2d Cir. 1974), the court enunciated a three-pronged test for determining if the state action requirement was met: (1) the state's involvement with the private institution is significant, (2) the state is involved with the activity that caused the injury, and (3) the state's involvement aids, encourages, or connotes approval of the challenged activity. Applying this test, the court held that the hospital's refusal to admit the plaintiff to its staff was not state action, despite the governmental financial aid the hospital received and the pervasive regulation of its activities. The *Barrett* test was followed in *Aasum v. Good Samaritan Hospital*, 395 F.Supp. 363 (D.C.Ore.1975). There the court refused to find state action despite numerous contacts between the state and the hospital, including state regulation, public appointment of nearly half the members of the Board of Directors, receipt of Hill-Burton funds, tax exemptions, and regular inspections by the State Board of Health.

In both *Barrett* and *Aasum*, the finding that no state action was involved primarily was based on the absence of a nexus between the state and the particular activity challenged, or the lack of state encouragement of the activity challenged. Other courts also have refused to find state action for the same reasons, despite receipt of Hill-Burton Funds, Medicare and Medicaid payments, tax exemptions, and state regulation. See *Chrisman v. Sisters of St. Joseph of Peace*, 506 F.2d 308, 313 (9th Cir. 1974); *Doe v. Bellin Memorial Hospital*, 479 F.2d 756, 761 (7th Cir. 1973) (Stevens, J.); *Ward v. St. Anthony Hospital*, 476 F.2d 671, 675 (10th Cir. 1973); *Slavcoff v. Harrisburg Polyclinic Hospital*, 375 F.Supp. 999 (M.D.

Pa.1974). We believe that these courts may have taken an unnecessarily restrictive view of the Supreme Court's state action decisions, since they seem to ignore the symbiotic relationship exception established in *Burton v. Wilmington Parking Authority*, supra. Nevertheless, these decisions are persuasive because the facts were nearly identical to the facts in the instant case.

█ Moreover, these decisions implicitly have refused to find a symbiotic relationship between the state and a private hospital, and at least one court has explicitly distinguished *Burton* on this ground. *Greco v. Orange Memorial Hospital Corporation*, 513 F.2d 873 (5th Cir.) cert. denied, 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 319 (1975), involved a private hospital built on land owned by Orange County, financed with Hill-Burton funds and a local bond issue, and subject to a lease arrangement with Orange County which required the hospital to furnish medical services to the public. The hospital was operated by a non-profit, tax exempt corporation which leased the hospital building and the land for the nominal sum of one dollar per year. The court held that the hospital's policy of refusing to allow elective abortions was not state action, and it distinguished *Burton* on several grounds. First, *Burton* involved racial discrimination. Courts may apply a less rigorous state action test in cases involving racial discrimination. See, e. g., *Greco v. Orange Memorial Hospital Corporation, supra*, at 879; *Jackson v. The Statler Foundation*, 496 F.2d 623, 628–29 (2d Cir. 1974), cert. denied, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *Barrett v. United Hospital*, 376 F.Supp. 791, 797 (S.D.N.Y.), aff'd, 506 F.2d 1395 (2d Cir. 1974).

Secondly, the symbiotic relationship found in *Burton* was not present in *Greco*. Unlike the situation in *Burton*, the private party in *Greco* (the hospital) was responsible for the maintenance and operation of the building. Moreover, Orange County did not obtain direct benefits from the hospital's abortion policy, while the revenues of the Wilmington Parking Authority did depend in part on the popularity of the res-

taurant, and therefore on its policy of racial discrimination. Most importantly, the lease between Orange County and the hospital gave the hospital exclusive authority to establish the terms and conditions of medical care and treatment. 513 F.2d at 879–81.

 We agree with the court in *Greco* that the relationship of a private hospital with local, state and federal governments usually does not involve the degree of interdependence of the symbiotic relationship in *Burton*. Tax exemptions, Hill-Burton funds, and Medicare and Medicaid payments generally are available to all hospitals on an approximately equal basis. Similarly, regulations are applied to all hospitals participating in a particular program. This general government involvement, although comprehensive and significant, is far different from the specific physical and financial interdependence that was present in *Burton*. We believe that findings of state action based on joint participation should be limited to cases of direct and intimate involvement between the private defendant and the government, at least in cases not alleging racial discrimination. This interpretation is in accord with the recent Supreme Court decisions that have declined to follow *Burton* despite substantial government contacts in the form of regulations. See *Jackson v. Metropolitan Edison Co.,* supra; *Moose Lodge v. Irvis,* supra.

The plaintiffs have cited few cases in which the activities of private hospitals have been found to be state action, and none of these decisions is persuasive. In *Citta v. Delaware Valley Hospital,* 313 F.Supp. 301 (E.D.Pa. 1970), a court in this District held that the hospital's refusal to reinstate the plaintiff physician to full privileges was state action. This holding was based primarily on the hospital's receipt of Hill-Burton funds. However, *Citta* was decided prior to the Supreme Court's recent decisions in *Jackson* and *Moose Lodge,* which tightened state action requirements. In light of these decisions, and the numerous other recent cases refusing to find state action in comparable situations, *Citta* is no longer an authoritative precedent.

The plaintiffs also cite *Klinge v. Lutheran Charities Ass'n of St. Louis,* 523 F.2d 56 (8th Cir. 1975). In that case the defendant apparently conceded that the plaintiff had a constitutional right not to be removed from the hospital's staff without due process of law. The court reiterated several times that no claim was made that the hospital's action was not state action. 523 F.2d at 60–61. Consequently, the Court's uncontested assumption of jurisdiction is not entitled to great weight as a precedent for finding state action in the setting of a private hospital.

All of the remaining hospital cases cited by the plaintiffs are from the Fourth Circuit. *Doe v. Charleston Area Medical Center,* 529 F.2d 638 (4th Cir. 1975); *Sams v. Ohio Valley General Hospital Association,* 413 F.2d 826 (4th Cir. 1969); *Simkins v. Moses H. Cone Memorial Hospital,* 323 F.2d 959 (4th Cir. 1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964). Undoubtedly, the Fourth Circuit would find state action in this case. However, this minority view does not control our decision here, and we believe that a rigorous state action test is more in accord with the Supreme Court's rulings than is the Fourth Circuit's standard.

The plaintiffs also rely on a non-hospital case from this District. *Rackin v. University of Pennsylvania,* 386 F.Supp. 992 (E.D. Pa.1974). In *Rackin,* Judge Weiner analyzed all aspects of the relationship between the Commonwealth of Pennsylvania and the University of Pennsylvania, and concluded that the essential financial assistance provided by the state made the state a joint participant with the University of Pennsylvania for state action purposes. Although Judge Weiner's reasoning is persuasive, *Rackin* is obviously distinguishable from the present case involving Crozer-Chester Medical Center. Moreover, a more recent Eastern District decision has held that non-reappointment of a physician at Hahnemann Medical College and Hospital was not state action. *Sament v. Hahnemann Medical College and Hospital of Philadelphia,* 413 F.Supp. 434 (E.D.Pa.1976).

The distinguishing features enunciated by the court in *Sament* are equally applicable in this case, and given the great number of closely analogous cases involving hospitals, we believe that *Rackin* is an inappropriate precedent.

The state action issue in this case presented a very difficult question. Nevertheless, recent Supreme Court decisions and the great weight of authority indicate that private hospitals are not subject to suit for constitutional violations. The holding in *Greco v. Orange Memorial Hospital Corporation, supra,* was especially persuasive, since the hospital in that case apparently had more governmental contacts than Crozer-Chester Medical Center, yet the court determined that the hospital's activities did not meet the state action requirement.

Although we are compelled to grant the defendants' motion to dismiss, we do so somewhat reluctantly, because the hospital's blanket policy of refusing to perform sterilizations without spousal consent often operates unfairly and probably would be unconstitutional if Crozer-Chester were not shielded by its status as a private hospital. See *Planned Parenthood Association v. Fitzpatrick,* 401 F.Supp. 554, 564–68 (E.D. Pa.1975). Instead of refusing in all cases to perform sterilizations without consent, I believe that the hospital should have a policy that encourages the participation of the husband in the sterilization decision, but does not prevent a woman from obtaining a sterilization without his consent if she remains convinced that she wants to be sterilized. The husband's interests could be protected by requirements that he be given notice and an opportunity to present his opinion. See *Planned Parenthood Association v. Fitzpatrick, supra* at 592–93 (Opinion of Newcomer, J.). The harshness of Crozer-Chester's present policy was illustrated by the case of Ruth Begley, one of the named plaintiffs in this suit. When she joined this action, Mrs. Begley was in her seventh pregnancy. She had three children, and had had three miscarriages. Since no method of contraception appeared to be completely reliable in her case, Mrs. Begley wished to have a tubal ligation performed. But because her husband refused to sign a consent form, Mrs. Begley has been unable to obtain such an operation at Crozer-Chester Medical Center, apparently the only nearby facility at which she can obtain medical services. In such a case the hospital's continued refusal to permit the sterilization seems unjust and unenlightened—but it is not illegal.