**Janet R. BELL, Plaintiff,**

v.

**ST. REGIS PAPER COMPANY, CONTAINER DIVISION, et al., Defendants.**

Civ. A. No. C 76–96 A.

United States District Court, N. D. Ohio, E. D.

Dec. 27, 1976.

Mack D. Cook, II, Joseph W. Gibson, Akron, Ohio, for plaintiff.

William A. Gershuny, Farmer, Shibley, McGuinn & Flood, Washington, D. C., James K. Brooker, Day, Ketterer, Raley, Wright & Rybolt, Canton, Ohio, for defendants.

MEMORANDUM OPINION AND ORDER

CONTIE, District Judge.

This action was tried to the Court on September 30, October 1, October 4, and October 5, 1976. The following shall constitute the Court's findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

## PLEADINGS

In her amended complaint, plaintiff asserts five claims of discrimination. Plaintiff's first claim states summarily that defendant St. Regis discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., with respect to her "compensation, terms, conditions, or privileges of employment, because of plaintiff's race and/or sex, and/or her interracial marriage . . ." Plaintiff's second claim alleges that defendant St. Regis retaliated against her for filing a charge of discrimination before the E.E.O.C. Plaintiff's third, fourth and fifth claims assert that defendant St. Regis and "one or more of the [remaining] defendants" have violated her rights under 42 U.S.C. §§ 1981, 1985 and 1986 respectively, because of her "race and/or sex, and/or interracial marriage . . ." The only factual allegations contained in the complaint are that plaintiff is a white female and was married to a black male at all times relevant herein, and that she was an employee of defendant St. Regis Paper Company at its Canton, Ohio facilities from June 12, 1967 until October 7, 1974. The complaint specifies the time frame for each of its claims.

Although the amended complaint essentially asserts nothing more than conclusions of law, defendants chose not to move to dismiss said pleading. Rather, in an apparent effort to expedite the proceedings, defendants chose to file what they characterize as contention interrogatories. For example, one of said interrogatories requests that plaintiff state in detail the facts which she contends support her first claim. In response to said interrogatory, plaintiff replied by listing two specific incidents. However, said reply was prefaced with the statement that said incidents were provided by way of example and "not by way of limitation." Both the import of said qualification and the evidence offered at trial indicate that plaintiff, for whatever reason, chose to not fully answer said interrogatory. Yet defendants never moved the Court to compel a full and complete answer thereto or to other interrogatories of a similar nature. Thus, as of the date of trial, the parties, and the Court, entertained conflicting ideas as to the scope of plaintiff's claim. For example, plaintiff sought to introduce evidence regarding incidents and specific claims beyond those enumerated in either her complaint or answers to the interrogatories. Defendants countered by asserting that plaintiff was bound by her responses to the interrogatories. The Court responded by hearing all of plaintiff's evidence which was otherwise properly admissible. The Court concludes that it must consider all said evidence in rendering its conclusion.

In their answers, defendants have generally denied plaintiff's allegations of wrongdoing. It must further be noted that upon plaintiff's motion, all defendants have been dismissed without prejudice except St. Regis, Richard C. Burton, Ralph Zupp, Charles Zimmerman, and Betty Yanonne.

## FINDINGS OF FACT

Plaintiff, a caucasian, has been married to a negro for approximately eighteen (18) years. In the early 1960's, she and her husband determined that supplemental income would be necessary to sustain their standard of living, and she therefore sought employment. After a succession of jobs not relevant herein, she was hired by defendant St. Regis on June 12, 1967, into the classification of Laborer Assembly Rotating. Said classification was the lowest level in defendant St. Regis' employment structure and concomitantly paid the lowest wages. Prior to plaintiff's being accepted for employment by defendant St. Regis, she was required to and did pass a physical examination.

During the latter part of 1967 and the early months of 1968, plaintiff was working in the Laborer Assembly classification on the third shift at defendant St. Regis' Canton, Ohio facilities. During this period, plaintiff was experiencing a certain amount of harassment from, at least in part, her fellow employees. Specifically, plaintiff was experiencing name-calling, anonymous phone calls, threatening messages of vari-

ous modes, and on one occasion a refusal by fellow employees to allow her to leave the company's parking lot. Various references during these harassment tactics were made to her interracial marriage. These attacks apparently came from both blacks and whites, although plaintiff indicated that black females gave her the most trouble.

In an effort to bring an end to this harassment, plaintiff sought the aid of defendant St. Regis. Plaintiff spoke with defendant Richard C. Burton, the general plant manager, in early 1968 regarding said incidents. At the time of her meeting with Mr. Burton, plaintiff refused to specify which individuals were involved. In view of these charges and plaintiff's lack of specificity as to particular names, Burton thought it was necessary in view of the general racial climate at the time to call in the services of someone he considered an expert in such matters. Therefore, he sought and received the services of Reverend Sheridan Lancaster, Executive Director of the Fair Employment Practices Board of Canton, Ohio. Reverend Lancaster is black, and after consultation with plaintiff and Burton it was decided that plaintiff would be transferred from the third shift to another shift. Burton also concluded that it was necessary to remind his employees of company rules regarding harassment of fellow employees. Each of these courses of action were accomplished.

Apparently these actions were to a large extent successful. The level of harassment of plaintiff decreased significantly. However, within approximately six months after plaintiff's transfer to another shift, she bid for and was awarded a position on the shift where the original difficulties arose. However, this action apparently had little effect in inducing further harassment.

In August 1970, plaintiff filed a grievance alleging that an unidentified co-employee on a non-specified date threw scrap paper at her but that the foreman did nothing about it. St. Regis requested details but plaintiff declined to do so and abandoned her grievance.

Sometime in 1971, plaintiff again began experiencing further harassment. Said harassment was experienced both from fellow employees and from anonymous phone callers. Plaintiff also testified that one of St. Regis' two shift superintendents at the plant, Ralph Zupp, would often drive by her house for no reason but to spy on her. While the Court concludes that plaintiff was suffering to a certain degree from the mindless attacks of bigots because of her interracial marriage during this period, the Court specifically finds that defendant Zupp was not a part of these attacks; the Court also finds that the effects of this harassment were magnified in plaintiff's mind by her then existing emotional problems. Further, the Court finds that a certain amount of the harassment which plaintiff was experiencing can only be attributed to the friction existing between plaintiff and employees junior to her on the seniority lists, because plaintiff exercised her seniority in choosing more lucrative daily job assignments; another contributing cause was plaintiff's abrasive personality.

In 1972, St. Regis hired a new personnel manager, Mr. R. C. Graves. Mr. Graves was aware of plaintiff's difficulties from the beginning of his tenure in said position. Some time in the latter half of 1972, plaintiff complained to Mr. Graves about the harassment she was experiencing. Plaintiff named two fellow employees and Mr. Graves met with said employees in his office. Each employee denied any wrongdoing. Mr. Graves reminded them of the penalties for violation of company rules regarding harassment and had them sign short summaries of their statements.

The Court finds that Graves and other persons in management at St. Regis were at all times relevant herein concerned with maintaining appropriate relations with the union, and were well aware of their responsibilities to document any decision to discipline employees for violation of company rules on harassment. Graves apparently concluded that the company should not attempt to discipline the two employees identified by plaintiff and instead attempted to

deal with the problem in a different way. Specifically, Reverend Lancaster was again called to St. Regis. On October 26, 1972, Reverend Lancaster, Mr. Burton, Mr. Graves, and plaintiff met and discussed the problem of harassment. Each person at the meeting explained their views and Reverend Lancaster concluded by recommending to plaintiff that if she felt threatened in her work environment she should consider seeking work elsewhere. St. Regis also sought to remind its employees of company rules on the subject of harassment and posted a short letter agreement between itself and the Union regarding contractual clauses prohibiting discrimination in its plant. Plaintiff was apparently dissatisfied with these actions and she filed a charge of discrimination against St. Regis with the E.E.O.C. on October 31, 1972.

While the above described events were developing, St. Regis posted on October 11, 1972 a bid sheet for another position on the third shift. Plaintiff was the most senior of the four employees who had bid for said position when, on October 12, 1972, St. Regis voided said bid sheet. Said action was taken by St. Regis solely because of its decision to reduce its labor force on the third shift; the fact that plaintiff had bid on said job and was the most senior person to have, to that date, bid therefor played no part in St. Regis' decision. The bid sheet stated that it would be posted for a period of six days.

Officials at St. Regis became aware of plaintiff's charge to the E.E.O.C. by Christmas of 1972 at the latest. As a result of this knowledge, it was determined that St. Regis' management personnel should attempt to document wherever possible whatever further transactions transpired between themselves and plaintiff.

On December 27, 1972, plaintiff suffered an injury to her wrist while at work. Due to the hour of the accident, she was transported by company personnel to a nearby hospital for X–rays. The hospital treated the injury and recommended that she see the company physician, Dr. Stires, as soon as possible. Plaintiff thereafter contacted defendant Betty Yanonne, an employee of long standing in the personnel office at the Canton facility, to obtain such an appointment. Upon the advice of Dr. Stires transmitted to plaintiff by Yanonne, the plaintiff sought to return to work on December 28th; however, the pain she experienced in her attempts to work forced her to return home shortly after her arrival. Plaintiff was first examined by Dr. Stires on December 30, 1972. Dr. Stires found no fracture and informed the company that plaintiff should experience no work loss.

However, plaintiff did not return to work. On January 4, 1973, personnel manager Graves wrote to plaintiff and informed her of her right to contact a physician of her own choosing. It was and is defendant St. Regis' policy to pay for any said examinations and medication ordered as a result thereof. In said letter, Graves also noted that as far as he knew, her failure to return to work was not consistent with reports of Dr. Stires. On the same day, plaintiff entered the personnel office and informed Yannone that she was under the care of Dr. Gregory, her personal physician. Plaintiff remained off work until January 15, 1973.

Although St. Regis apparently paid Dr. Gregory's medical bills, it contested plaintiff's application for workmen's compensation benefits for this period of absence from work resulting from her wrist injury. St. Regis' decision to contest this claim resulted solely from the report it had from Dr. Stires; the facts of plaintiff's sex, race, interracial marriage, and her charge to the E.E.O.C. played no part in St. Regis' decision on this issue. On May 2, 1973, plaintiff's claim was allowed by the Ohio Workmen's Compensation Bureau.

In February, 1973, St. Regis posted two bids for work on a ZB Taper machine. Plaintiff bid for and was awarded the operator's position on said machine. However, plaintiff subsequently chose to work as the helper on said machine, and a male was therefore substituted as the operator. Plaintiff was awarded this bid on February 26, 1973. Within a very short time thereafter, plaintiff became dissatisfied with her

new position. The work was fast and difficult and apparently the shift assigned her was not to her liking. Furthermore, plaintiff claimed that she was experiencing difficulty with the training foreman, Ward Warfield.

Plaintiff reported her dissatisfaction to Mr. Graves. Mr. Graves declined to return her to her former position because of standard company policy against such action. As a matter of general policy, St. Regis does not allow a person bidding into a new job to vacate said position merely because he or she did not like the new responsibilities. Furthermore, Mr. Graves did not credit plaintiff's claims of difficulties with the training foreman, who was a man of long tenure with St. Regis. The Court concludes that Mr. Warfield was not harassing plaintiff on account of her race, interracial marriage, sex, or her charge to the E.E.O.C.

Plaintiff was totally dissatisfied with Mr. Graves' decision. She therefore resolved, at any cost, to obtain her desired ends. On March 2, 1973, at approximately 8:45 a.m., she entered Mr. Graves' office in the personnel office and handed him a slip of paper signed by her personal physician, Dr. Gregory. Said slip indicated that as of March 1, 1973, plaintiff was "partially incapacitated;" said assertion was accomplished by checking the appropriate box on the slip. Dr. Gregory further indicated therein that his diagnosis of plaintiff was "acute anxiety syndrome." No further explanation of plaintiff's condition was provided. Plaintiff indicated to Mr. Graves that this slip required her return to a laborer position. Mr. Graves told plaintiff that Dr. Gregory's slip did not explain the extent of plaintiff's illness, nor did it establish whether she was capable of working even in the laborer position. Plaintiff responded by restating her difficulties with the training foreman and asserting that another employee, Danny Capocci, had been taken off another machine during his training period. Mr. Graves responded by informing plaintiff that the other employee had been removed solely be-

cause of his inability to perform the job; plaintiff, however, was able to perform the duties required of a helper on a ZB Taper machine. When Mr. Graves indicated that he would have to call Dr. Gregory to ascertain his precise recommendations, plaintiff became very irate and abusive in her language. She also informed Mr. Graves that if she could not get her way she might file another charge to the E.E.O.C. At that point, Mr. Graves ordered her to return to work.

Shortly after plaintiff left Graves' office, he called Dr. Gregory. Dr. Gregory indicated that he did not intend by his slip to state that plaintiff was medically incapable of performing her duties. Based upon this explanation, Graves concluded not to return plaintiff to a laborer's position.

Even prior to this March 2, 1973 meeting, plaintiff had become well known to all employees in St. Regis' personnel office. It is apparent to the Court that Mr. Graves and defendant Yannone felt that they were dealing with a person prone to be critical. This conclusion, as well as the fact of plaintiff's charge to the E.E.O.C. and the recommendation of St. Regis' New York Office that they document all dealings with plaintiff, resulted in the transcription of a summary of plaintiff's conversation with Graves at this 8:45 a.m. meeting. Later on the same day, during her break, plaintiff was standing immediately outside the personnel office talking with a co-worker. This conversation in part included expressions of plaintiff's dissatisfaction with the job and of her resolve to be removed therefrom. Plaintiff went so far as to state that during that afternoon she would take a tranquilizer and then pretend she was incapable of performing her duties. Defendant Yanonne overheard these comments and, because of her knowledge of what had transpired that morning, typed a short summary of what plaintiff said. Defendant Yanonne also directed that another employee in said office transcribe what she had heard.[1] The purposes for transcribing

1. A conversation of plaintiff under similar circumstances occurring on March 1, 1973 was also transcribed. Said conversation also related to plaintiff's dissatisfaction with the ZB Ta-

per job, and was transcribed by defendant Yannone solely because it contained an implied threat to get off that job by improper conduct.

plaintiff's comments were totally unrelated to plaintiff's sex, race, or interracial marriage. Later that afternoon, plaintiff and her Union representatives were summoned to Mr. Graves' office. At that time, plaintiff was given a three work day suspension for her conduct of that morning in Mr. Graves' office. Said suspension became effective on March 5, 1973, and was motivated solely by plaintiff's misconduct that morning. In a letter dated March 2, 1973, and received by the E.E.O.C. on March 6, 1973, plaintiff charged St. Regis with retaliating against her because of her October 21, 1972 charge.

Shortly thereafter plaintiff apparently took an overdose of tranquilizers. She was repeatedly hospitalized until mid-September 1973. Although the Union filed a grievance on her behalf, said grievance was not pursued to arbitration.

Among the benefits provided by St. Regis to its employees is sickness and accident benefits. St. Regis maintains insurance for said benefits with an insurance company; the term of said benefits is 26 weeks. In accordance with her rights under the policy, plaintiff received sickness and accident benefits until July 23, 1972. At that time, apparently because Graves and defendant Zupp suspected that plaintiff was malingering, an appointment with a physician to examine plaintiff to ascertain if she was still disabled from work was set. Graves' suspicions apparently resulted from information he received from defendant Zupp that the latter had seen plaintiff at various Little League games. While plaintiff alleges that during said encounters defendant Zupp accosted her in a threatening manner, the Court specifically finds that no more than a casual meeting occurred. Plaintiff did not appear for the physical examination scheduled and therefore her benefits were stopped. Later, however, a second appointment was set and plaintiff received the remainder of her benefits. The defendants' decision to require another medical examination resulted solely from their suspicions that plaintiff was malingering; plaintiff's race, interracial marriage, sex, or the fact that she had filed a charge to the E.E.O.C. played no part in this decision. Plaintiff returned to work on October 1, 1973, and pursuant to an agreement with the Union she was returned to a laborer job.

Plaintiff thereafter worked intermittently. In 1974 plaintiff was off work for 162 of the 194 scheduled work days. She was released from the care of her personal physician for her last illness on September 24, 1974. Although physically capable at that time of returning to her job, plaintiff submitted her letter of resignation effective October 7, 1974. The asserted reason for said decision was her unwillingness to return to the harassment existing at St. Regis. Plaintiff has not sought work since; she claims she is incapable of working.

Plaintiff's charges to the E.E.O.C. were referred to the Ohio Civil Rights Commission. That body duly investigated plaintiff's charges and found no reasonable cause to believe that Ohio laws on discrimination had been violated. Thereafter, the E.E.O.C. sent one of its investigators, Annette P. Johnson, to fulfill its statutory responsibility of investigating plaintiff's charges. Ms. Johnson spent at least 134 hours investigating plaintiff's charges and she concluded that plaintiff's charges were well-founded. Based upon her report and recommendation, the E.E.O.C. issued a determination to that effect on July 28, 1975. Thereafter conciliation efforts failed and this suit followed.

## DISCUSSION AND CONCLUSIONS OF LAW

Before addressing the merits of plaintiff's claims, the Court finds it appropriate at this juncture to comment upon the E.E.O.C. investigation. At trial, plaintiff offered the testimony of Ms. Johnson as an expert on discrimination in employment. It appears that Ms. Johnson's only training

which would qualify her to so testify is her experience as an investigator for the E.E.O.C. During the testimony of Ms. Johnson, plaintiff offered the entire E.E.O.C. file on plaintiff's claims. The Court received said file for the limited purpose of examining and substantiating the basis of Ms. Johnson's ultimate conclusions.

Ms. Johnson testified that she had extensively investigated plaintiff's claims and that as a result thereof she was convinced to a "probable certainty" that plaintiff had suffered discrimination both as to the terms and conditions of her employment and as a result of retaliation for plaintiff's filing of a charge to the E.E.O.C. The Court at this point must express its confusion as to the precise extent of Ms. Johnson's opinion, for during cross-examination she repeatedly noted that her determinations and recommendations to the E.E.O.C. were predicated solely upon the "reasonable cause to believe" test. Of course, if her opinion was solely that there was evidence upon which a reasonable person could find discrimination, the value of her testimony to this Court is of minimal significance. For reasons which will become apparent below, the Court shall presume that Ms. Johnson intended to and consistently testified that in her expert opinion plaintiff had suffered discrimination in violation of Title VII of the Civil Rights Act of 1964. The Court totally and unequivocally rejects Ms. Johnson's conclusions on these issues.

Ms. Johnson's investigation of plaintiff's claims, while extensive, overlooked or ignored many material facts. For example, in her recommendation to the E.E.O.C., Ms. Johnson misstated Dr. Gregory's March 1, 1973 slip by indicating that plaintiff was "functionally incapacitated" whereas it merely stated that she was partially incapacitated. Ms. Johnson did not include in said report reference to Dr. Gregory's conversations with Mr. Graves regarding the extent of plaintiff's illness; in fact, it appears that although Johnson contacted Dr. Gregory by phone, her inquiries failed to elicit from Dr. Gregory his conclusions that plaintiff was not as of March 1, 1973 incapacitated from performing her regularly assigned duties at St. Regis. Rather, Ms. Johnson merely presumed that Dr. Gregory had no knowledge as to the specific job content of plaintiff's position and therefore was unable to express a specific opinion on this point.

Other examples illustrating the deficiencies in Ms. Johnson's investigation and final report are as follows: Although Ms. Johnson was informed by St. Regis officials of the existence of at least two other interracial marriages in the Plant, she failed to investigate whether said employees had experienced discrimination on account of their interracial marriages. In fact, there have been no reports by the two employees involved in said interracial marriages regarding discrimination or harassment against them for these reasons. Ms. Johnson did not include reference to these facts in her final report. Regarding plaintiff's claim that she should have been removed from the ZB Taper machine because she did not like the job since another employee had been removed from another machine, Ms. Johnson credited plaintiff's assertions. Apparently the only substantial investigation she conducted on this point was to inquire of the other employee's mother as to her understanding of why her son was allowed to leave his position at the other machine. Apparently, Ms. Johnson's questioning of other St. Regis employees and of Union officials did not adequately develop the fact that the subject employee was relieved of his responsibility solely because he was incapable of performing the job required. Furthermore, Ms. Johnson's conclusions and recommendations that St. Regis had failed to provide a work environment free from harassment, intimidation, and racial bias resulted, at least in part, from her failure to accord any weight to the company's actions in seeking the advice and counsel of Reverend Lancaster of the Fair Employment Practices Board of Canton, Ohio. Ms. Johnson did not contact Reverend Lancaster because at the time of the investigation she was of the opinion that Reverend Lancaster was a "company" man. Apparently she presumed that despite Reverend Lancas-

ter's official position with the City of Canton and his specific expertise in these matters he had blindly supported the company's position.

The above are but a few illustrations of the deficiencies in Johnson's investigation and report. The Court is unwilling at this time to ascribe these deficiencies to any intentional effort on Ms. Johnson's part to ignore evidence and to weight her recommendation in support of plaintiff's claims; however, at least the Court can characterize her investigation as incomplete. The Court is fully aware of the time constraints and limited resources available to the E.E.O.C. and to its investigators to conduct the investigations necessitated by the large number of charges it receives. When it is remembered that the E.E.O.C.'s investigations are to be directed toward a determination of whether or not there exists reasonable cause to believe that the charging party has suffered discrimination in violation of Title VII, the incomplete nature of Ms. Johnson's investigation is less objectionable. However, this Court must be mindful that Ms. Johnson testified that to a probable certainty plaintiff had suffered discrimination. There is a significant difference in the tests.

Ms. Johnson's conclusions upon the ultimate issues presented in this case were predicated solely upon the results of her investigation. As the Court finds that her investigation failed to develop numerous material facts on the issues presented, it does not credit Ms. Johnson's conclusions and it need not address other issues presented by her testimony. See *Barry v. United States*, 501 F.2d 578, 584 (6th Cir. 1974); 32 C.J.S. Evidence § 569(1).

The Court shall now turn to the merits of plaintiff's claims. As previously indicated, the specific issues in question in this action have not been clearly delineated by the parties. For the purposes of this Memorandum Opinion and Order, the Court shall address the issues as outlined by plaintiff's counsel both in oral argument at the conclusion of the trial and in plaintiff's proposed findings of fact and conclusions of law submitted subsequent thereto.

Plaintiff's primary complaints are that defendants failed to take reasonable and necessary measures sufficient to prevent harassment to her person during her employment at St. Regis and that St. Regis voided the job bid posted on October 11, 1972 because of plaintiff's sex and interracial marriage, which incident raises the question of discriminatory job assignments by defendant to the third shift. Plaintiff also complains of the following events as constituting both direct discrimination and retaliation for her filing a charge with the E.E.O.C. in October of 1972: the denial of plaintiff's Workmen's Compensation claim in early 1973; defendant's refusal to remove plaintiff from her position as helper on the ZB Taper machine and the concomitant recording of her conversations; defendant's actions in disciplining plaintiff effective March 5, 1973; and defendant's actions in suspending her sickness and accident benefits on July 23, 1973.

■ In employment discrimination cases, a plaintiff must establish a *prima facie* case of discrimination; if this burden is met, then the burden of proving some legitimate, non-discriminatory reason for their actions shifts to defendants. See *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Potter v. Goodwill Industries of Cleveland*, 518 F.2d 864 (6th Cir. 1975); *Senter v. General Motors Corporation*, 532 F.2d 511 (6th Cir. 1976); *Vulcan Society of New York City Fire Dept., Inc. v. Civil Service Commission*, 490 F.2d 387 (2nd Cir. 1973); *Alvarez-Ugarte v. City of New York*, 391 F.Supp. 1223 (S.D.N.Y.1975); *Bush v. Kaim*, 297 F.Supp. 151 (N.D.Ohio 1969). Upon consideration of all the evidence, the Court concludes that plaintiff has failed to establish a *prima facie* case of discrimination.

■ The Court shall first address plaintiff's claim that defendants retaliated against her for filing a charge to the E.E.O.C. in violation of 42 U.S.C. § 2000e–3(a). In her complaint, plaintiff asserts that such

retaliatory measures occurred after October 3, 1972. As the Court has found that the plaintiff's charge to the E.E.O.C. was filed on October 31, 1972, the Court concludes that any retaliatory measures must have occurred subsequent thereto.[2]

The first incident specified by plaintiff as constituting an act of retaliation developed from her December 27, 1972 wrist injury. Specifically, plaintiff asserts that defendant St. Regis' decision to oppose her claim for workmen's compensation was retaliatory. While it is clear that St. Regis had notice of plaintiff's E.E.O.C. charge as of the date it denied her claim for workmen's compensation, and while it is also clear that defendant St. Regis does not always oppose claims for workmen's compensation, its action in this case was predicated solely upon the report of its physician, Dr. Stires, that plaintiff's injuries were not of sufficient severity to preclude her working. Such a medical report is certainly a valid basis upon which St. Regis could choose to exercise its legal rights under the laws of the State of Ohio to oppose a workmen's compensation claim. The Court has found as a matter of fact that this decision was totally unrelated to plaintiff's charge to the E.E.O.C.

The next incidents which plaintiff asserts were retaliatory were defendant St. Regis' refusal to relieve her from the ZB Taper machine helper position, the transcription of her conversations, and her disciplinary layoff, all of which occurred on March 1 and 2, 1973. The Court has found that defendant St. Regis has a policy and practice of not allowing an employee who has just bid onto a job to leave that job solely because he or she is not satisfied with it; this policy is applied regardless of an employee's race, sex, or interracial marriage, and its application to plaintiff was totally unrelated to plaintiff's filing a charge to the E.E.O.C. The only evidence from which the Court could find that defendant St. Regis and the

other defendants applied this policy discriminatorily is plaintiff's assertion that another employee, Danny Capocci, was relieved of his duties on the Thompson machine. However, the Court finds this testimony of plaintiff not credible, and has specifically found that defendant St. Regis' decision as to Mr. Capocci resulted solely from the latter's inability to perform his job. However, the Court has also found that plaintiff was capable of performing her job on the ZB Taper machine. Therefore, it is clear that the defendants did not refuse to relieve her of said position and responsibilities because she had filed a charge to the E.E.O.C.

Plaintiff also argues that Mr. Graves' refusal to return her to general labor on the basis of Dr. Gregory's March 2, 1973 slip constitutes another example of retaliation by the defendants. However, review of that doctor's slip reveals that Mr. Graves was perfectly justified in seeking further explication of the precise import thereof. As the Court has found that Dr. Gregory indicated to Graves that by said slip he did not intend to state that plaintiff was incapable of performing her regular duties, the Court can only conclude that Mr. Graves' decision consistent therewith was proper. For this reason, and as plaintiff has presented no other evidence from which a retaliatory intent could be inferred, the Court concludes that Mr. Graves' decision in this matter was not intended as retaliation for plaintiff's filing the charge.

The transcriptions of plaintiff's conversations on March 1 and 2, 1973 resulted from defendant Yanonne's awareness that St. Regis' E.E.O.C. experts directed that all transactions with plaintiff be documented and from her conviction that such comments were pertinent to plaintiff's requested removal from the ZB Taper machine. The only relationship these transcriptions had to plaintiff's charge to the E.E.O.C. was the legitimate concern of maintaining a

---

**2.** As plaintiff's complaint does not allege that she had suffered retaliatory measures for opposing any practice which is unlawful under Title VII, a course of conduct which is also proscribed by 42 U.S.C. § 2000e–3(a), the Court need not and will not consider any incidents occurring prior to October 31, 1972.

record for defense against such charges as have been herein advanced.

Plaintiff's three day disciplinary lay-off for her conduct in Mr. Graves' office on the morning of March 2, 1973 provides no basis for plaintiff's claim in this regard. The Court has found as a matter of fact that Mr. Graves' decision in this regard was totally unrelated to plaintiff's E.E.O.C. charge.

Finally, plaintiff claims retaliation in the discontinuance of her sickness and accident benefits on July 23, 1973. It appears that prior to that date, defendant Zupp, one of St. Regis' shift superintendents at the subject facility, saw plaintiff on more than one occasion at Little League ball fields in their neighborhood. Mr. Zupp apparently reported said events to Mr. Graves, thereby raising in the latter's mind the possibility of malingering on plaintiff's part. Such a conclusion appears reasonable under the circumstances, especially when it is considered that on March 2, 1973, plaintiff had represented the state of her physical and mental condition differently than that subsequently reported to Graves by plaintiff's own physician. Therefore, under these circumstances requiring plaintiff to be examined by a physician to determine if she was still disabled from work appears reasonable and, in any event, the Court concludes that said decision is totally unrelated to the fact that she filed a charge to the E.E.O.C.

Thus, the Court finds that none of the incidents specifically relied upon by plaintiff establish retaliation. The Court is mindful of plaintiff's claim that while perhaps individually insufficient to establish retaliation, taken together said incidents establish a course of conduct by defendants from which such a conclusion could be inferred. The Court recognizes that this characterization of the facts, absent close scrutiny, is certainly not totally unreasonable. It certainly appears that in a number of situations within less than a year after she filed her charge, plaintiff was not given everything she sought. However, it must be remembered that also during that period St. Regis awarded her job bid on the ZB Taper machine, paid her medical bills and prescription bills for her December 1972 wrist injury, and extended to her every opportunity to come in and speak with management regarding her problems. All parties to this action recognize that plaintiff currently is, and in all probability was in early 1973, suffering from emotional problems. The Court concludes that this fact combined with plaintiff's less than tactful manner combined both to magnify in her mind and to some extent to create the significance of the subject events. The Court concludes that even taken together the list of incidents described above do not establish that any of the defendants retaliated against her for filing a charge to the E.E.O.C.

Plaintiff's first and third claims assert that defendant St. Regis has discriminated against her on the basis of her sex, race, and her interracial marriage in violation of 42 U.S.C. §§ 2000e and 1981. As plaintiff's burden of proof under either section in an employment discrimination case is practically identical, the Court shall address these claims jointly.

 Specifically, plaintiff contends that each of the incidents and patterns previously identified constitute violations of the above mentioned provisions. With regard to the incidents just discussed under plaintiff's claim of retaliation, the Court concludes that plaintiff's claims of discrimination thereby are meritless. The Court has found as a matter of fact that defendant's actions in each of said incidents were totally unrelated to her sex,[3] her race, and her interracial marriage. As these issues have been adequately discussed above, no further comment herein need be made.

 Plaintiff also asserts that defendants' failure to prohibit the harassment she experienced while employed at St. Regis is

---

**3.** Section 1981 does not proscribe discrimination on the basis of sex. See *Schetter v. Heim*, D.C., 300 F.Supp. 1070 (1969).

violative of the subject provisions. The Court has found that plaintiff has suffered some harassment both by fellow employees and by other unidentified persons. However, there is no proof that any management personnel of St. Regis effected such harassment. Plaintiff claimed that on one occasion when a fellow employee threw boxes on her, she reported this fact to the foreman, defendant Zimmerman. Upon inquiry by the foreman, the other employee denied any involvement in said incident. At that point, the foreman warned the other employee by reminding him of the consequences of such action and let the matter drop. Plaintiff also testified that shift superintendent Zupp drove by her home on many occasions to spy on her and that at the ball fields he threatened to discharge her. The Court concludes that there is no reasonable inference of discrimination on the basis of plaintiff's race, sex, or interracial marriage in the first incident.[4] The Court finds that while defendant Zupp on occasion drove by plaintiff's home on the way to the Plant because the gas station which he frequents is on that route, Zupp never participated in any harassment of plaintiff. Thus the Court concludes that St. Regis and the remaining defendants never directly participated in any harassment of plaintiff.

However, an employer covered by the terms of Title VII may be legally responsible for the acts of harassment of its employees merely by condoning them. Cf. *Howard v. National Cash Register Co.*, 388 F.Supp. 603 (S.D.Ohio 1975). Thus the next issue becomes whether defendants' actions permitted or condoned the harassment of plaintiff. The Court concludes that they did not.

As reflected by its findings of fact, it is clear that defendants responded swiftly and reasonably to plaintiff's claims of harassment. Notices of company policy regarding harassment were posted; meetings were held with plaintiff and sometimes with the parties plaintiff charged with harassing her; the advice of an independent expert, Reverend Lancaster, was sought and followed by transferring plaintiff to a different shift. It must be remembered that while St. Regis has the power to discipline employees for violation of its rules, it must be prepared to defend its decision in said regard. As the Court has previously found, St. Regis' management personnel are acutely aware of their relationship with the union and the probability of grievances being filed as a result of any disciplinary action imposed. Because of this potentiality and the lack of positive, corroborative evidence of harassment by any one or more of its employees, St. Regis declined to take any positive disciplinary actions in this respect. The Court concludes that St. Regis did not tolerate or condone harassment of plaintiff and in fact that it did everything it reasonably could be expected to have done to prevent the same.

The only remaining issue of discriminatory job practices relates to St. Regis' policies as to job assignments. The only evidence offered as to job assignments related to the October 11, 1972 posting of a job bid on the third shift at defendant's Plant.[5] This job bid sheet stated that it would remain open until October 16. On the second day of its posting, plaintiff filed her bid therefor. As of that time, plaintiff was the most senior person bidding on said job. The Court has found as a matter of fact that St. Regis' decision to void said job bid sheet was predicated solely upon its decision to reduce the labor force on the third shift; that is, the Court has found that said decision was in no way related to plaintiff's race, sex, or interracial marriage. The Court therefore finds

4. Furthermore, the Court finds no other credible evidence of any discrimination against or harassment of plaintiff by defendant Zimmerman.

5. Other evidence on this point is contained in the E.E.O.C. file. However, said file and the testimony of Annette Johnson on this issue were received by the Court solely for the limited purpose described above. As utilization of said evidence to satisfy plaintiff's burden of establishing a *prima facie* case of discrimination in job assignments is beyond the limited purpose for which it was received, said evidence will not be discussed herein.

plaintiff's assertions in this regard to be meritless.

 The Court shall next address plaintiff's claim that defendants have violated her rights under 42 U.S.C. § 1985(3). The only credible evidence in the record from which it could conceivably be inferred that the remaining defendants or any two of them conspired to deprive plaintiff of her rights is the seeming unanimity of opinion and solidarity of action of defendant R. C. Graves and defendant Yannone in dealing with plaintiff, and the interaction between said persons and St. Regis' E.E.O.C. coordinator, Mr. Wright, in dealing with plaintiff. However, the Court concludes that an inference of conspiracy is totally contrary to the weight of the evidence in this case. Therefore the Court finds that plaintiff has failed to establish such a conspiracy and that her claim under § 1985(3) must therefore fail. See *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

 Finally, the Court shall discuss plaintiff's claims under 42 U.S.C. § 1986. As the Court has found that none of the remaining defendants or that any of St. Regis' management personnel conspired to deprive plaintiff of her rights, the only possible application of § 1986 is to any existing conspiracy between fellow employees of plaintiff.[6] Section 1986 itself contains a one year statute of limitations. Plaintiff's association with St. Regis ceased on October 7, 1974. As plaintiff's claim under section 1986 was initiated more than one year after said date, the Court concludes that it is barred by the applicable statute of limitations. See *Pollard v. United States*, D.C., 384 F.Supp. 304 (1974); *Wilkinson v. Hamel*, D.C., 381 F.Supp. 768 (1974).

As additional and alternative grounds for denying plaintiff's claim under § 1986, the Court concludes that plaintiff has failed to establish the existence of such a conspiracy. First, only several fellow employees have

been identified by plaintiff as having been involved in harassing her. Plaintiff presented no evidence at trial of an agreement or other association between said persons. In the absence of proof, this Court finds itself precluded from finding the existence of any conspiracy by persons other than defendants which violated section 1985. See *Hamilton v. Chaffin*, 506 F.2d 904 (5th Cir. 1975).

The Court at this time wishes to extend its appreciation to all counsel for the thorough and excellent presentation at trial. The parties' counsel have greatly aided the Court in resolving this dispute.

Accordingly, as the Court having found that each of plaintiff's claims are meritless, judgment shall be entered for defendants and against plaintiff.

IT IS SO ORDERED.

---

6. Of course, there could be a conspiracy between plaintiff's fellow employees and non-employees, or solely between non-employees. However, as is discussed above, the Court finds

no such conspiracy, and to the extent that it extended to non-employees of St. Regis, said defendant would be unable to prevent the effectuation of the ends of the conspiracy.